590 F.2d 829
 Annabel STODDARD, Plaintiff-Appellee-Cross-Appellant,
v.
SCHOOL DISTRICT NO. 1, LINCOLN COUNTY, WYOMING and Board of
Trustees, Walter Brog, L. D. Frome, Rex Bateman, in their
official capacity; and J. Dennis Dayton, Principal, in his
official capacity; and Carwin H. Linford, Superintendent, in
his official capacity; and Joe Deromedis, Roland Johns and
J. Dennis Dayton, Individually, Defendants-Appellants-Cross-Appellees.
 Nos. 77-1418, 77-1419.
 United States Court of Appeals,
Tenth Circuit.
 Argued Sept. 27, 1978.
Decided Jan. 5, 1979.
 
 Michael H. Gottesman, Washington, D.C. (of Bredhoff, Gottesman, Cohen & Weinberg, David Rubin, Washington, D.C., and Patrick E. Hacker, Cheyenne, Wyo., on the brief), for plaintiff-appellee-cross-appellant.
 Dennis L. Sanderson, Kemmerer, for defendants-appellants-cross-appellees.
 Before McWILLIAMS, BARRETT and McKAY, Circuit Judges.
 McWILLIAMS, Circuit Judge.
 Annabel Stoddard, a nontenured teacher in the elementary school in Cokeville, Wyoming for the school years of 1973-74 and 1974-75, was denied renewal of her teaching contract for the school year of 1975-76. She later instituted the present action against her former employers, alleging that they had failed to renew her teaching employment for reasons violative of the First and Fourteenth Amendments and of 42 U.S.C. § 1983. The named defendants are: (1) School District No. 1, Lincoln County, Wyoming, in which the elementary school in Cokeville, Wyoming is located; (2) the Board of Trustees for School District No. 1, in their official capacity; (3) the school superintendent and the school principal in their official capacities; (4) two members of the Board of Trustees, Joe Deromedis and Roland Johns, who reside in Cokeville, Wyoming, in their individual capacities; and (5) the school principal, J. Dennis Dayton, in his individual capacity.
 
 
 1
 By answer the defendants alleged, in effect, that Stoddard's contract was not renewed because of teaching deficiencies and that constitutionally impermissible reasons played no part in the Board's decision not to renew her contract of employment.
 
 
 2
 Trial of the case was to a jury, with both general verdicts and special interrogatories being submitted to the jury for its consideration. One form of general verdict was in favor of all defendants and against the plaintiff.
 
 
 3
 A second form of general verdict was in favor of the plaintiff and against "the following defendants," who were then classified in six different groupings which the trial court referred to as Groups A through F. Group A was all defendants in their official capacities and defendants Deromedis, Johns and Dayton, individually. Group B was Dayton, individually, and the members of the Board of Trustees and the school superintendent in their official capacities. Group C was the School District, and the Board of Trustees and the school superintendent in their official capacities. Group D was the defendants Deromedis and Johns in their individual capacities, the School District, and the Board of Trustees and the superintendent in their official capacities. Group E was the defendant Dayton as an individual. Group F was the defendants Deromedis and Johns, individually. The jurors were instructed that if they found for the plaintiff, they should place a check mark beside such groups as they unanimously believed were liable to the plaintiff. This form of general verdict also provided appropriate blank spaces for the fixing of compensatory damages, punitive damages, and attorney's fees.
 
 
 4
 As concerns the forms of general verdicts referred to above, the jury returned a verdict in favor of the plaintiff and against those defendants listed in Group C only, namely, the School District, and the members of the Board of Trustees and the school superintendent in their official capacities. Compensatory damages were set at $33,000, punitive damages at $5,000, and attorney's fees at $5,800.
 
 
 5
 Four special interrogatories were submitted to the jury. The first interrogatory listed nine possible reasons why the School District and its Board of Trustees failed to renew plaintiff's teaching contract, which included all reasons suggested by both the plaintiff's and defendants' evidence, and asked the jury to answer "yes" or "no" as to whether the listed reason was in fact a reason for the nonrenewal of plaintiff's teaching contract. By its answers to this particular interrogatory the jury found that plaintiff's teaching contract was not renewed because of her physical size, lack of church attendance, the location of the house trailer in which she lived, and the conduct of her personal life. By its negative answer to other assigned reasons for nonrenewal, the jury found that plaintiff's status as a divorced person, her nonactivity in community affairs, her alleged lack of classroom discipline, untidiness in the classroom and her teaching methods were not reasons for the nonrenewal of her contract.
 
 
 6
 By its answer to the second interrogatory the jury found that the School District and its Board of Trustees did Not act in good faith in failing to renew plaintiff's teaching contract for the 1975-76 school years.
 
 
 7
 By its answer to the third interrogatory the jury found that the individual defendants Deromedis, Johns and Dayton all acted in bad faith and for reasons which were constitutionally impermissible in failing to renew plaintiff's contract.
 
 
 8
 By its answer to the fourth interrogatory the jury found that the individual defendants Deromedis, Johns and Dayton had not acted maliciously in failing to renew plaintiff's contract.
 
 
 9
 As indicated, the jury by its general verdict found in favor of the plaintiff and against the School District, the Board of Trustees and the school superintendent in their official capacities (Group C), which group did Not include the defendants Deromedis, Johns and Dayton in their individual capacities. In this latter regard the trial judge noted that notwithstanding the fact that by their general verdict the jury had declined to return a verdict against Deromedis, Johns and Dayton in their individual capacities, the jury at the same time had by its answer to the third interrogatory found that the three individuals had acted in bad faith and for reasons which were constitutionally impermissible in failing to renew the plaintiff's teaching contract. Acting pursuant to the provisions of Fed.R.Civ.P. 49(b), the trial court determined that the answers to the special interrogatories justified the entry of judgment against Deromedis, Johns and Dayton in their individual capacities, notwithstanding the general verdict. The trial court thereupon entered judgment in favor of the plaintiff against the School District, the members of the District's Board of Trustees, the school superintendent, all in their official capacities, and against Deromedis, Johns and Dayton in their individual capacities, in the sum of $33,000 as compensatory damages, $5,000 as punitive damages, and $5,800 as attorney's fees.
 
 
 10
 The defendants later filed a motion for judgment notwithstanding the verdict, or, in the alternative, a motion for a new trial. The latter motion was denied. The motion for judgment notwithstanding the verdict was granted in part, and denied in part. Specifically, the trial court held that the School District was not a "person" within the meaning of 42 U.S.C. § 1983, and accordingly vacated the judgment which had previously been entered against the District. The trial court additionally held that inasmuch as the jury had found that Deromedis, Johns and Dayton had acted without malice, punitive damages and attorney's fees were not proper, and that part of the earlier judgment awarding punitive damages and attorney's fees was set aside. The judgment in favor of the plaintiff and against the members of the Board of Trustees and the school superintendent in their official capacities, and against Deromedis, Johns and Dayton, in their individual capacities, in the sum of $33,000 was allowed to stand. From that amended judgment the defendants filed a notice of appeal, and the plaintiff filed a cross-appeal.
 
 The Appeal (No. 77-1418)
 
 11
 The appellants are those defendants against whom final judgment was entered, namely, the members of the Board of Trustees and the school superintendent in their official capacities, and two members of the Board of Trustees, Deromedis and Johns, and Dayton, the school principal, in their individual capacities. The School District itself is not an appellant as the judgment initially entered against it was later set aside on the ground that it was not a "person" within the meaning of 42 U.S.C. § 1983.
 
 
 12
 A brief statement of the background facts may bring this controversy into focus. Plaintiff is a divorced woman with custody of her four minor children. When her husband left her, after eleven years of marriage, she borrowed money to attend college and to obtain a teaching degree. She graduated from college in 1972, and did graduate work the following year, all in the field of education.
 
 
 13
 In the spring of 1973 she sought employment from School District No. 1, Lincoln County, Wyoming, to teach in Cokeville, Wyoming, an isolated community of some four to five hundred people. Approximately 60% Of Cokeville's population are members of the Latter Day Saints faith, as is the plaintiff. Plaintiff was hired to teach third grade under a one-year contract covering 1973-74.
 
 
 14
 Stoddard was unable to find housing in Cokeville, so she and her four children lived in a mobile home placed on a trailer park on the main street of town. Her teaching performance for the year 1973-74 was rated satisfactory and she was rehired by the District for the year 1974-75. Her teaching performance for that year was also rated generally satisfactory, although there was some concern over lack of discipline in her classroom. The latter was excused on the ground that, at the time, plaintiff was about to undergo surgery. No letter or notice of probation was given her.
 
 
 15
 On February 4, 1975, the situation changed. On that date the school principal, Dayton, handed plaintiff a letter advising her that he would not recommend her renewal as an elementary schoolteacher. However, since plaintiff had majored in physical education, and since the school was in need of a physical education teacher, Dayton invited plaintiff to submit a program for that position. The letter indicated that if she submitted a satisfactory program she would be reemployed on "probation" for the following year. During the next few days, plaintiff prepared a written proposal pursuant to Dayton's invitation.
 
 
 16
 Deromedis and Johns were the two members of the Board of Trustees from Cokeville and they were relied on by the other members of the Board in connection with matters pertaining to the Cokeville school. Johns somehow learned of the possibility that plaintiff might be employed as a physical education teacher. Johns immediately phoned Dayton and indicated that he was "definitely opposed" to reemploying plaintiff in any capacity in the school system.
 
 
 17
 In accord with their understanding, plaintiff completed her proposal for a physical education program and submitted it to Dayton. However, the latter, by a letter dated February 12, 1975, advised plaintiff that he would not recommend her renewal in any capacity. The letter stated that her physical education program was impressive on paper, but was too "idealistic" and would not work. Additionally, the letter listed three reasons why Dayton believed plaintiff would not perform satisfactorily as a teacher in the Cokeville school: (1) her elementary school classroom had been disorderly, and there was reason to believe that she would not maintain the physical education equipment properly; (2) as she could not maintain discipline in her third grade class, there was real doubt that she could do so in physical education classes; and (3) there was a lack of dynamics on the part of the plaintiff in motivating students.
 
 
 18
 When Dayton handed the letter of February 12, 1975 to plaintiff, he invited her to come to his office at the close of school. At that meeting, which lasted well over an hour, Dayton, according to the plaintiff, advised her that the reasons stated in his letter were not the "real" reasons for his inability to recommend renewal of her contract, but were merely the reasons which he "had to put down on paper." He then informed the plaintiff that the "real" reasons for nonrenewal were: (1) recurring rumors that she was having an affair with another resident in the trailer park; (2) that there was dissatisfaction in the community with the fact that she played cards and that she did not attend church regularly; and (3) that she did not have an attractive physical appearance which the school required of its physical education teachers, and that the "lack of dynamics" to which he had referred in his letter was her obesity.*
 
 
 19
 At the same meeting, according to the plaintiff, Dayton told her that he was sorry that he could not recommend her for renewal, and assured her that any lack of discipline in the classroom was only a minor matter and would not have warranted a recommendation of nonrenewal. He explained that he had received a phone call that there would be "hell to pay" if plaintiff's contract were renewed, and that he was caught "between the rock and the hard place." When plaintiff protested that the rumors regarding her private life were simply not true, Dayton replied that "it really doesn't matter whether it's true or not, because that was what was going around the community." Dayton also added that if she would resign, rather than suffer nonrenewal, he would give her a good recommendation. Plaintiff declined the offer, with the comment that if she did resign, she would be admitting that the rumors were true.
 
 
 20
 Plaintiff did not resign, and the Board of Trustees later voted to not renew her contract, based on Dayton's recommendation. Plaintiff completed her 1974-75 contract with the School District. Thereafter plaintiff was unable to obtain employment as a teacher, which she attributed to her "dismissal" from the Cokeville school. She then determined to bring the present action.
 
 I.
 
 21
 By its answers to the special interrogatories, the jury found that the plaintiff's teaching contract was not renewed by the Board of Trustees for constitutionally impermissible reasons, and that in thus nonrenewing, the members of the Board and school principal were acting in bad faith. It is argued on appeal that the evidence is legally insufficient to support such findings, except as to Dayton, the school principal, and that the judgment against Dayton must itself be reversed because of trial error. We find no trial error which would necessitate a reversal of the judgment against Dayton, or any other defendant, and our study of the record leads us to conclude that the evidence is sufficient to support the jury's answers to the interrogatories. There was direct evidence that Dayton, the school principal, was motivated by constitutionally impermissible reasons in recommending to the Board of Trustees that the plaintiff's contract not be renewed. There was circumstantial evidence that Dayton was pressured by the Board, or at least certain members thereof, into recommending the plaintiff's nonrenewal, when her teaching record would have reasonably warranted renewal. We are disinclined to overturn the jury's determination of such fact questions.
 
 II.
 
 22
 The jury by its general verdict did not return a verdict against the defendants Deromedis, Johns and Dayton in their individual capacities. However, by its answers to interrogatories the jury found that Deromedis, Johns and Dayton acted in bad faith and for reasons that were constitutionally impermissible. Finding that the answers to the interrogatories were consistent with each other, but inconsistent with the general verdict and otherwise irreconcilable, the trial court entered judgment against Deromedis, Johns and Dayton in their individual capacities in accordance with the answers, notwithstanding the general verdict. Such is permitted by Fed.R.Civ.P. 49(b) and we find no error in this action by the trial judge. Turner v. Global Seas, Inc., 505 F.2d 751 (6th Cir. 1974); Theurer v. Holland Furnace Co., 124 F.2d 494 (10th Cir. 1941).
 
 III.
 
 23
 The jury was instructed, in effect, that the plaintiff was entitled to judgment if the defendants in their actions were motivated "even in part" by constitutionally impermissible reasons. It is conceded that Mt. Healthy City Board of Ed. v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), announced after the trial of this case, has adopted a standard differing from the "even in part" instruction given the jury in the instant case. However, we agree that in view of the answers given by the jury to the special interrogatories, any error in this regard is harmless. By their answers, the jury determined that the defendants were motivated Solely by constitutionally impermissible reasons.
 
 The Cross Appeal (No. 77-1419)
 I.
 
 24
 The jury returned a verdict against the School District, and the trial judge initially entered judgment against the District in accord with such verdict. However, this judgment was later set aside on the ground that the District was not a "person" within the meaning of 42 U.S.C. § 1983. That particular matter has now been resolved by Monell v. New York City Dep't of Social Serv., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In that case the Supreme Court held that "local government" may constitute a "person," under 42 U.S.C. § 1983.
 
 
 25
 Defendants additionally urge that under Monell the School District cannot be held liable simply because it employed a "tortfeasor," i. e. Dayton, the school principal. We do not regard the present case as being one to hold the School District liable for Dayton's actions. Rather, it is basically an effort to hold the School District liable for the actions of its Board of Trustees. The only way the School District can act is by and through its Board of Trustees. The instant case is distinguishable from the Respondeat superior situation referred to in Monell.
 
 
 26
 On appeal it is also argued that judgment should not be entered against the School District because it is an arm of the state and is entitled to Eleventh Amendment immunity. The trial court rejected this argument, as do we. The School District in the instant case is "more like a city or county than it is like an arm of the state." See Mt. Healthy City Board of Ed. v. Doyle,429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). See also Unified School Dist. No. 480 v. Epperson, 583 F.2d 1118 (1978); Courtney v. School Dist. No. 1, Lincoln Cty., Wyo., 371 F.Supp. 401 (D.Wyo.1974).
 
 II.
 
 27
 As above mentioned, the jury by its general verdict awarded the plaintiff the sum of $5,000 as punitive damages, and $5,800 as attorney's fees. However, the trial court later disallowed both punitive damages and attorney's fees on the ground that the jury's answer to a special interrogatory that the defendants had acted Without malice precluded any award of punitive damages or attorney's fees. Under the circumstances, we agree with this ruling.
 
 
 28
 The trial court instructed the jury that before it could award any sum as either punitive damages or attorney's fees it must find, Inter alia, that the defendants acted "maliciously or wantonly or oppressively." Under the instruction such conduct, i. e. malicious conduct, was not synonymous with "bad faith" in the context in which the latter was used in Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). As far as we can ascertain, there was no objection to the instruction that before there could be an award of punitive damages or attorney's fees there must be a finding that the defendants acted maliciously. Such being the case, the answer by the jury to a special interrogatory that Deromedis, Johns and Dayton acted without malice precludes any judgment for punitive damages and non-statutory attorney's fees. Murphy v. Dyer, 409 F.2d 747 (10th Cir. 1969).
 
 
 29
 The plaintiff argues, alternatively, that if its claim for so-called " common law" attorney's fees be disallowed, it should not be foreclosed from seeking attorney's fees under the provisions of the Civil Rights Attorneys' Fees Awards Act of 1976. 42 U.S.C. § 1988. We agree, and on remand plaintiff should be allowed to file, under 42 U.S.C. § 1988, a motion for the allowance of attorney's fees, and to have its claim therefor adjudicated on its merits in accordance with appropriate judicial discretion. Such claim has not been waived.
 
 
 30
 The judgment insofar as it set aside and vacated the earlier judgment against the School District for compensatory damages in the sum of $33,000 is reversed, and in this regard the case is remanded to the trial court with direction that judgment be entered for the plaintiff and against the School District in the amount of $33,000. Otherwise, the judgment by the trial court is affirmed.
 
 
 
 *
 Dayton testified that he had no such conversation with plaintiff. However, the jury by its verdict obviously believed plaintiff, and on appeal we must view the evidence in a light most favorable to the prevailing party in the trial court