TETON PLUMBING AND HEATING,
INC., a Wyoming corporation,
Appellant (Plaintiff),

v.

BOARD OF TRUSTEES, LARAMIE
COUNTY SCHOOL DISTRICT
NUMBER ONE, Appellee (Defendant).

No. 88–48.

Supreme Court of Wyoming.

Oct. 24, 1988.

Don W. Riske and Stephen M. Kissinger of Law Office of Don W. Riske, Cheyenne, for appellant.

Ward A. White and Larry B. Kehl of Guy, Williams, White & Argeris, Cheyenne, for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

MACY, Justice.

Appellant Teton Plumbing and Heating, Inc., in an event receiving local publicity, was rejected as a subcontractor on a construction project let by appellee Board of Trustees, Laramie County School District Number One. Thereafter, appellant brought an action in district court, alleging, inter alia, a cause of action pursuant to 42 U.S.C. § 1983 for deprivation of civil rights —specifically, the right to procedural due process under the Fourteenth Amendment to the United States Constitution. The district court entered summary judgment in favor of appellee, and this appeal was taken.

We affirm.

Appellant describes the issue in this fashion:

WHETHER APPELLANT'S RIGHT TO PARTICIPATE IN CONTRACTS LET BY APPELLEE IS A PROPERTY OR LIBERTY INTEREST PROTECTED BY THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES.

Appellee, alternatively, characterizes the appeal as presenting three issues, which it phrases as follows:

I. THE ISSUE OF AN ALLEGED DEPRIVATION OF A LIBERTY INTEREST WITHOUT DUE PROCESS SHOULD NOT BE CONSIDERED BY THE COURT AS IT HAS BEEN RAISED FOR THE FIRST TIME BY APPELLANT ON APPEAL.

II. WHETHER THE APPELLEE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE APPELLANT'S ALLEGED DEPRIVATION OF A LIBERTY INTEREST WITHOUT DUE PROCESS OF LAW.

III. WHETHER THE APPELLEE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE APPELLANT'S ALLEGED DEPRIVATION OF A PROPERTY INTEREST WITHOUT DUE PROCESS OF LAW.

The events leading directly to the litigation in the instant case occurred in 1986. An understanding of the issues presented, however, requires that we set out in some detail the history of appellant's business relations with appellee. Appellant was a Wyoming corporation wholly owned by Edwin Smith, which worked almost exclusively on public works projects as a plumbing subcontractor. In 1982, appellant was the plumbing subcontractor for the construction of the new Johnson Junior High School being built for Laramie County School District Number One (School District)[1] in

1. The Board of Trustees, as the defendant/appellee in this case, is the governing body of the School District. W.S. 21-3-105. The School District is a body corporate. W.S. 21-3-101. W.S. 21-3-111(a)(i) provides that the board of trustees in each school district may be sued in the name by which the district is designated.

Thus, for purposes of suit, a school district and the board of trustees are virtually one and the same. This opinion, therefore, will on occasion refer interchangeably to the School District rather than appellee Board of Trustees where such designation accords with common understanding and usage and enhances clarity.

Cheyenne. In the course of the construction and afterwards, the School District became aware of problems regarding appellant's workmanship and materials.

Thereafter, in 1983, appellee solicited bids for the construction of the new Gilchrist Elementary School. After a successful bid and award of the contract, the general contractor notified representatives of the School District that the designated plumbing subcontractor had withdrawn and requested that appellant be substituted in its place. As a result of the previous problems with appellant, appellee refused the substitution of appellant as subcontractor on this project. This action was taken at a board meeting held August 22, 1983. Appellee's difficulties with appellant on the Gilchrist Elementary School project, however, did not end at that point. The plumbing subcontract was let to Yukon Corporation, which in turn subcontracted part of the work to Edwin Smith. When appellee attempted to reject Mr. Smith from the project, Mr. Smith claimed that appellee had no authority to take such action. The issue was submitted to arbitration, and, following a hearing, the arbitrator found in favor of appellee. The arbitrator's award included the following findings:

The School District was justified in requesting the removal of Ed Smith from the job. The District had previously rejected Teton Plumbing & Heating as a subcontractor, as it was entitled to do under the general conditions of the contract. The subcontract was then let to Yukon Corporation, who in turn gave part of the contract to Ed Smith purportedly as a sub-subcontractor. There is no question that Ed Smith and Teton Plumbing were one and the same, and it was admitted by Smith that the arrangement was made to get around the School District's rejection of his firm as a subcontractor.

After the arbitration decision, appellant, through counsel, wrote to appellee inquiring as to whether appellant would be permanently barred from obtaining further work with the School District and whether its bids would be automatically rejected. Dean Conine, the School District's assistant superintendent for business services, responded by a letter dated April 25, 1984, in which he stated in part:

In answer to the concerns expressed by Mr. Smith, it is the position of the District that Mr. Smith would be welcome to view and/or obtain copies of plans and that he would also be welcome to bid on any project. As you are well aware, the Board can reject any or all bids and were his bid the low bid and it was rejected, I would think the Board would give him an explanation.

Discussions here lead me to believe that rather than an automatic rejection, the District would require perhaps additional safeguards for a time to insure completion of a project to the District's satisfaction. Once a reestablishment of credibility has taken place, these safeguards could be relaxed.

Subsequently, in June of 1984, appellee awarded a contract for the Storey Gym remodeling to a general contractor who had listed appellant as the plumbing subcontractor. Appellant performed the plumbing work on this project. Robert Platt, the district engineer for the School District, testified in his deposition that appellant was subject to a heightened level of supervision on this project and that, even with the closer scrutiny of appellant's work, problems with appellant's workmanship were again encountered.

In the summer of 1986, appellant worked as a subcontractor on an outside sewer system project at Johnson Junior High School with the knowledge, and apparently also the approval, of the School District. Mr. Platt stated in his deposition that he did not become aware of appellant's participation in this project until after it had commenced but that he was not concerned with appellant's involvement in this instance. He stated that he believed appellant could satisfactorily perform outside utility work, as opposed to interior plumbing which requires more sophistication and expertise. The record does not indicate any problems resulting from appellant's participation in this project.

Out of this background and in this atmosphere of business relations between the parties arose the events creating the controversy and litigation in this case. In July and August 1986, appellee solicited bids for the construction of the Johnson Junior High School addition. The bids were opened on August 22, 1986, and Westates Construction Company was the low bidder. Westates listed appellant as the plumbing subcontractor.

Westates' bid was considered by appellee at a board meeting held August 25, 1986. The minutes of the meeting with respect to this bid indicate that a motion was made and seconded to accept the bid of Westates. A discussion followed in which Trustee Alfred A. Atkins stated that the plumbing subcontractor listed for the project (appellant) would not be acceptable because of problems appellee had experienced in the past with that subcontractor. Trustee Atkins then made a motion, which was seconded, to allow the architect and district engineer to negotiate for a different subcontractor. After further discussion, the original motion, as amended to allow substitution of another plumbing subcontractor, passed unanimously. The following day the Wyoming State Tribune carried an article reporting on the meeting with the headline, "School District 1 Bars Teton Plumbing." The article quoted Trustee Atkins as having said that appellant was responsible for some damage to school buildings which was irreparable and that some of the damage included " 'atrocious' installation of the heating system and 'the furnace was located in the wrong spot' and eventually had to be moved."

By letter dated October 10, 1986, appellant requested a reversal of the action taken at the August 25 board meeting and further requested a contested case hearing before the board. The superintendent of schools responded on October 23, 1986, with a letter which indirectly rejected appellant's requests and which stated that it was the present position of the School District that appellant was an acceptable contractor for outside utility work and that future bids for such work would be given the same consideration as bids from other

contractors, but that appellant was not acceptable for interior plumbing work. Edwin Smith stated in an affidavit that, subsequent to this board action and the attendant publicity, appellant's business fortunes had rapidly declined, culminating in the liquidation of its assets and the discontinuation of business.

This action was commenced on November 4, 1986, when appellant filed its "APPLICATION FOR WRIT OF MANDAMUS AND COMPLAINT FOR DAMAGES" in the district court. In this complaint, appellant alleged, inter alia, a denial of procedural due process under the United States and Wyoming Constitutions and requested that the court direct appellee to provide a contested case hearing. Appellant also alleged causes of action, apparently founded on tort theories, relating to lost profits, damage to business reputation, and intentional, reckless, and malicious disregard for appellant's constitutional rights. Appellee answered with a general denial and asserted as an affirmative defense the failure to state a claim upon which relief could be granted. With leave of the district court, appellant filed an amended complaint on May 8, 1987, adding as an additional cause of action a claim pursuant to § 1983 for violation of its civil rights, specifically its right to procedural due process as guaranteed by the Fourteenth Amendment to the United States Constitution. Appellee answered and filed a combined motion to dismiss and motion for summary judgment.

A hearing was held on appellee's motions, and on September 4, 1987, the district court issued a decision letter granting summary judgment in favor of appellee on both the § 1983 claim and the request for a contested case hearing and dismissing all of appellant's other claims. Subsequently, it came to the district court's attention that it had authorized the submission of supplemental affidavits. Upon receipt and review of these affidavits, the court issued a second decision letter on September 17, 1987, essentially reaffirming the prior decision. A judgment and order of dismissal was entered on October 16, 1987. Appellant thereafter filed a motion to alter or amend

the judgment, seeking a reversal of the summary judgment entered on the § 1983 claim. After a hearing on appellant's motion, the court issued a decision letter denying the motion, and an order to that effect was entered on January 13, 1988. This appeal was then perfected.

Appellant limits its appeal to a challenge of the summary judgment granted appellee on the § 1983 claim. Summary judgment is properly granted upon the dual findings that there is no genuine issue of material fact and that the prevailing party is entitled to judgment as a matter of law. *Whipple v. Northern Wyoming Community College Foundation of Sheridan,* 753 P.2d 1028 (Wyo.1988); *Farr v. Link,* 746 P.2d 431 (Wyo.1987). The facts in this case are not in dispute, and we only need to determine whether appellant was entitled to judgment as a matter of law. On a question of law, we accord no deference to and are not bound by the district court's decision. Id.; *Employment Security Commission of Wyoming v. Bryant,* 704 P.2d 1311 (Wyo.1985).

 Section 1983 creates a cause of action for the deprivation, under color of state law, of rights guaranteed by the United States Constitution or laws. That section provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Colum-

bia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983 (1982).[2] For purposes of the statute, a school district may be a "person" acting under color of state law. *Stoddard v. School District No. 1, Lincoln County, Wyoming,* 590 F.2d 829 (10th Cir. 1979); *Courtney v. School District No. 1, Lincoln County, Wyoming,* 371 F.Supp. 401 (D.Wyo.1974). Similarly, a corporation (such as appellant) is considered to be a "person" possessing due process rights and being entitled to maintain a § 1983 action. *San Bernardino Physicians' Services Medical Group, Inc. v. County of San Bernardino,* 825 F.2d 1404 (9th Cir.1987); *Fulton Market Cold Storage Company v. Cullerton,* 582 F.2d 1071, 50 A.L.R. Fed. 758 (7th Cir.1978), cert. denied 439 U.S. 1121, 99 S.Ct. 1033, 59 L.Ed.2d 82 (1979).

The elements required to establish a claim for relief pursuant to § 1983 are: "(1) that the conduct complained of was engaged in under color of state law, and (2) that such conduct subjected the plaintiffs to a deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States." *Schultz v. Palmberg,* 317 F.Supp. 659, 661 (D.Wyo. 1970). See also *Sowell's Meats and Services, Inc. v. McSwain,* 788 F.2d 226, 86 A.L. R.Fed. 897 (4th Cir.1986), and *Courtney,* 371 F.Supp. 401. On appeal, appellant asserts a deprivation of protected property and liberty interests without due process in contravention of the Fourteenth Amendment to the United States Constitution.[3] With respect to the liberty claim, however, appellee argues that the asserted deprivation of a liberty interest was never raised in the proceedings below and therefore should not be considered by this Court upon appeal. We agree.

 Appellant first raised its § 1983 claim in its amended complaint. The amended complaint asserted a violation of

---

2. State courts have concurrent jurisdiction with the federal courts over § 1983 actions. *Board of Trustees of Weston County School District No. 1, Weston County v. Holso,* 584 P.2d 1009 (Wyo. 1978); *Merriman Construction Co. v. County of Geauga,* 572 F.Supp. 1223 (N.D.Ohio 1983); *Tomsick v. Jones,* 464 F.Supp. 371 (D.Colo.1979).

3. The Fourteenth Amendment, in pertinent part, proclaims: "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

appellant's civil rights "including, but not limited to, Plaintiff's right to procedural due process" under the Fourteenth Amendment. The amended complaint did not specify what protected interest appellant was allegedly deprived of without due process. Appellant, however, fleshed out the nature of its claim in its memorandum in opposition to appellee's motion for summary judgment. In this memorandum, appellant argued that it had been deprived of a right to bid upon and participate in contracts let by appellee and that the asserted right amounted to a legitimate claim of entitlement; i.e., a property interest. Appellant, in this memorandum, never asserted the violation of a liberty interest, such as an injury to reputation or an infringement upon the freedom to contract. Appellant continued to adhere to this "property interest" posture throughout the proceedings below, up to and including its motion for amendment of judgment wherein appellant asserted that the district court had erred in not finding a property interest in its status as a prospective bidder. Correspondingly, appellee limited its arguments in motions and memoranda to the issue of a property interest.[4]

We see no reason to deviate from our general rule that new issues cannot be raised on appeal. *Ricci v. New Hampshire Insurance Company*, 721 P.2d 1081 (Wyo. 1986); *Pine Creek Canal No. 1 v. Stadler*, 685 P.2d 13 (Wyo.1984). In a similar situation we stated:

Related to appellees' argument is the fundamental rule, applicable to appeals from summary judgments, that parties may not advance new theories or issues in order to secure a reversal of the lower court's determination. Theories or issues which are not apparent or reasonably discernible from the pleadings, affidavits and exhibits will not be considered.

*Minnehoma Financial Company v. Pauli*, 565 P.2d 835, 838 (Wyo.1977). Although we have noted an exception to this rule where the lower court lacked subject matter jurisdiction with respect to the new issue (Ricci, 721 P.2d 1081), we have further said: "Absent this exception it is well established that '[a] new theory cannot be asserted on appeal.' " Id. at 1088 (quoting *Weber v. Johnston Fuel Liners, Inc.*, 519 P.2d 972, 978 (Wyo.1974), appeal after remand 540 P.2d 535 (Wyo.1975)). Accordingly, we do not consider the propriety of the grant of summary judgment in relation to appellant's newly asserted theory of a deprivation of a liberty interest.

The only issue left for determination, therefore, is whether, as a matter of law, summary judgment was proper in relation to appellant's claimed deprivation of a property interest without due process. Neither party disputes the district court's determinations that appellant was not afforded a hearing before being excised from Westates' bid and that a post-deprivation remedy satisfying the requirements of due process was not available. Thus, the issue is reduced to whether appellant possessed a property interest subject to due process protections. We are in agreement with the district court that appellant lacked such a protected interest.

The nature of property interests protected by the Fourteenth Amendment was addressed by the United States Supreme Court in *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The Court said that property interests protected by due process considerations are not limited to ownership of real property, chattels, or money but extend to the security of interests a person has obtained in specific benefits. Id.

To have a property interest in a benefit, a person clearly must have more than an

---

**4.** The only reference to a liberty interest in the proceedings below was made by the district court in its first decision letter, wherein the court observed:

The Court has not overlooked the fact that Plaintiff's reputational interest is at issue in these proceedings. Yet, as set forth above, 42 U.S.C. § 1983 provides no redress according

to *Paul v. Davis,* [424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) ].

Without addressing the correctness of the district court's statement, we note only that it is unclear why the reference to a liberty interest was made when appellant had never presented the issue to the district court.

abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a *legitimate claim of entitlement to it.*

Id. at 577, 92 S.Ct. at 2709 (emphasis added). To a similar effect, and particularly relevant to the instant case, is the language in *American Conveyor Corporation v. Municipality of Guanica,* 614 F.Supp. 922, 930 (D.P.R.1985), wherein the court, citing Roth, said: "In order to have a property interest in a government benefit, whether it be a job *or a public works contract,* the party making the claim must show that it has a legitimate claim of entitlement." (Emphasis added.) The Supreme Court, in Roth, also described the source of property interests:

> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

408 U.S. at 577, 92 S.Ct. at 2709. See also *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed. 2d 494 (1985); *Dickeson v. Quarberg,* 844 F.2d 1435 (10th Cir.1988).

▆ Appellant asserts that it had a protected property interest in being allowed to participate in contracts let by appellee, or, as the district court aptly summarized the claim, appellant asserts a property interest in its "status" as a bidder. In accordance with Roth and its progeny, we must evaluate appellant's alleged property interest by looking to Wyoming law and relevant school district rules and policies. W.S. 21–3–110 describes the duties of the boards of trustees in Wyoming school districts. Paragraph (a)(viii) establishes certain bidding procedures for building projects and provides in pertinent part:

> The district shall reserve the *right to reject any and all bids* and to waive irregularities and informalities in the bidding.

(Emphasis added.) The School District's standardized "Instructions to Bidders," as issued in connection with the Johnson Junior High School addition project, states that appellee does not obligate itself to "the lowest or any other bid," and the "Project Manual" states that it reserves the right to "reject any or all bids without further obligation." Additionally, the "Bid Form for General Contractors" specifies that the general contractor shall not employ any subcontractors that the School District finds objectionable. In agreement with the district court, we fail to see how the statute or appellee's regulations provided appellant with anything approaching an entitlement to be accepted as a bidder or subcontractor or even to have its bids entertained by appellee, particularly in light of the fact that appellant had been previously removed from the Gilchrist Elementary School project for substandard work.

We find support for our position in the case of *Kasom v. City of Sterling Heights,* 600 F.Supp. 1555 (E.D.Mich.1985), aff'd 785 F.2d 308 (6th Cir.1986). In that case, the city council rejected all bids on a landscaping project and ordered rebidding. The lowest bidder brought suit against the city pursuant to § 1983. The city's charter contained a provision authorizing the city to reject any and all bids. The court in Kasom noted that the central issue in disappointed bidder cases is "whether a plaintiff has shown that the benefit he seeks to enjoy is one to which he is entitled or merely one he desires to enjoy." Id. at 1559. In dismissing the plaintiff's claims, the court distinguished the situation from one in which a state statute requires public works contracts to be awarded to the lowest bidder, noting a limited property interest in such a situation. The court observed that, where the discretion of the state official responsible for conferring the benefit is limited by state law, an entitlement may exist respecting a benefit that is sought but not yet obtained. The court held, however, that no such limitation on discretion exists where the official may reject any and all bids and consequently there was no entitlement giving rise to a protected property interest on behalf of the disappointed

bidder before the court in that case. To a similar effect is the language found in *Waltentas v. Lipper*, 636 F.Supp. 331, 336 (S.D.N.Y.1986), wherein the court stated: "Only when procedures impose a 'significant substantive restriction' on the defendant's decision making does an expectation of a specific decision become a property interest." See also 10 E. McQuillin, Municipal Corporations § 29.77 at 413–14 (3rd ed. 1981), where, in relation to municipal corporations, the author states that, when a municipal officer is authorized to reject any and all bids, the lowest bidder does not obtain a property interest and that "the courts will not interfere with the discretion unless exercised with a fraudulent intent."

■ Appellant also characterizes the action of appellee as a debarment (i.e., the "[e]xclusion from government contracting and subcontracting," Black's Law Dictionary 361 (5th ed. 1979)), and claims that such debarment affected a protected property interest. We initially observe that the evidence in the record indicates that appellee's action at the August 25, 1986, board meeting only effected the rejection of appellant as a subcontractor on the Johnson Junior High School addition project. The subsequent letter to appellant's counsel from the superintendent of schools, however, did state that appellant was not acceptable for interior plumbing work, although it additionally stated that appellee did consider appellant an acceptable contractor for outside utility work and would give consideration to its bids for such projects. To the extent that this representation by the superintendent may have signified something akin to a partial debarment, and we do not hold that it did, we do not see that it infringed upon a protected property interest.

The cases involving debarment of contractors from bidding on government contracts generally have held that such a debarment affects only a liberty interest, as opposed to a property interest, and then only in certain circumstances. The debarment issue often arises in connection with government procurement contracts. In *Smith & Wesson, Division of Bangor Punta Corporation v. United States*, 782 F.2d 1074, 1081 (1st Cir.1986), the court quoted *Transco Security, Inc. of Ohio v. Freeman*, 639 F.2d 318, 321 (6th Cir.), cert. denied 454 U.S. 820, 102 S.Ct. 101, 70 L.Ed. 2d 90 (1981), as follows:

"While the deprivation of the right to bid on government contracts is not a property interest * * *, the bidder's liberty interest is affected when that denial is based on charges of fraud and dishonesty."[5]

See also *Old Dominion Dairy Products, Inc. v. Secretary of Defense*, 631 F.2d 953 (D.C.Cir.1980); and *Coyne–Delany Co., Inc. v. Capital Development Board of State of Illinois*, 616 F.2d 341 (7th Cir. 1980). In *Berlanti v. Bodman*, 780 F.2d 296 (3d Cir.1985), however, the Third Circuit held that a debarred contractor in New Jersey had a property interest in being allowed to bid for and be awarded public works contracts. In reaching that decision, the court relied first upon a decision of the New Jersey Supreme Court, which it interpreted as implying that debarment effects the deprivation of a property right, and secondly upon the New Jersey debarment statute which allowed debarment only for cause. Neither of the two factors relied upon by the court in Berlanti is present in the instant case. This Court has never held that debarment affects a property interest, and Wyoming does not have a debarment statute. Under Wyoming law, therefore, a protected property interest does not exist in relation to a right to bid on public projects.

■ Appellant further argues that it had a property interest on the basis of an implied promise or contract arising from the letter sent in 1984 by Dean Conine, the

5. In this case, appellant was not rejected as a subcontractor on the basis of fraud or dishonesty. The rejection, rather, was premised on inferior workmanship. In this vein, see *Mazaleski v. Treusdell*, 562 F.2d 701 (D.C.Cir.1977) (no due process liberty interest implicated when a public employee was dismissed for reasons of unsatisfactory job performance and insubordination—as opposed to termination on ground of dishonesty, which has been held to affect liberty interests).

assistant superintendent. That letter, as referenced earlier in this opinion, stated that appellant was welcome to continue to bid on projects, but it also reiterated appellee's authority to reject any and all bids. The letter further stated: "Discussions here lead me to believe that rather than an automatic rejection, the District would require perhaps additional safeguards for a time to insure completion of a project to the District's satisfaction." In making its implied promise argument, appellant relies on *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), wherein the Supreme Court stated:

> A person's interest in a benefit is a "property" interest for due process purposes if there are such rules for mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.

In *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), the Supreme Court, in referring to Perry, said that, while a property interest in employment could be created by implied contract, the sufficiency of the claim of entitlement must be determined by reference to state law. We agree with appellee that the letter from Mr. Conine is equivocal at best and does not represent an implied contract or a mutually explicit understanding enforceable under Wyoming law. It must be recalled that, at the time of receipt of this letter, appellant had previously been rejected and removed as a subcontractor on the Gilchrist Elementary School project. In our view, the letter at most may have fostered an expectancy in appellant that its bids or status as a bidding subcontractor would be considered, but it certainly did not provide a legitimate claim of entitlement to any such consideration.

For the foregoing reasons, we hold, as a matter of law, that the actions of appellee did not deprive appellant of a constitutionally protected property interest. The entry of summary judgment against appellant on its § 1983 claim was proper.

AFFIRMED.