Karen S. PETERSON; Dennis Giere; and Marcia Giere, Appellants (Plaintiffs),

v.

SWEETWATER COUNTY SCHOOL DISTRICT NUMBER ONE; and Don Baumberger, Mary Hay Chant, Grant Christensen, Kitty Smith, Kay Marschal, Terry McManus, Robert Ramsey, Norma Stensaas, Each Individually and in His/Her Capacity as Superintendent/School Board Members, Appellees (Defendants).

No. 95–298.

Supreme Court of Wyoming.

Dec. 17, 1996.

Karen S. Peterson, Salt Lake City, UT, for appellants.

Tracy J. Copenhaver of Copenhaver, Kath & Kitchen, Powell, for appellees.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN * and LEHMAN, JJ.

TAYLOR, Chief Justice.

Appellants are former employees of Sweetwater County School District Number One who applied for early retirement benefits during the 1991–1992 school year. In April 1992, appellants received notification that their applications were denied. Appellants brought an action in district court alleging breach of contract. Appellant Karen Peterson later amended her claims to include promissory estoppel, violation of the Age Discrimination in Employment Act (ADEA) as amended by the Older Worker's Benefits Protection Act (OWBPA), and denial of procedural due process and equal protection under 42 U.S.C. § 1983 (1987). The district court granted summary judgment in favor of appellees on all claims, and this appeal followed.

We affirm.

## I. ISSUES

Appellants describe the issues as follows:

* Chief Justice at time of oral argument.

A. The trial court erred in granting appellees' motion for summary judgment because:

   a. It failed to consider appellant's civil rights claims, namely, the Age Discrimination in Employment Act (ADEA) as amended, its regulations and appellants' constitutional violations

     1. *Civil Rights*

       i. *ADEA and OWBPA*

       ii. *42 U.S.C. Section 1983*

   b. Appellees were required by principals of contract and promissory estoppel to grant appellants the benefit of their bargained for 1991–92 negotiations agreement ERI plan between the District and its certified employees

   c. Appellees['] claim of insufficient money to extend ben[e]fits of the ERI plan to all eligible candidates is not supported by the facts

B. The issue of appellants[']/appellees['] motions for sanctions remain undecided by summary judgment.

Appellees respond by presenting two issues:

   Issue 1: Did the District Court commit error as a matter of law in holding that Defendants were entitled to summary judgment as to Plaintiffs' claim that the Defendants violated the Age Discrimination in Employment Act and/or regulations applicable thereto?

   Issue 2: Did the District Court commit error as a matter of law in granting Defendants' summary judgment on Plaintiffs' claim for breach of contract and/or promissory estoppel?

## II. FACTS

In 1983, the Sweetwater County School District Number One (School District) adopted an Early Retirement Plan (Plan) which provided that a teacher or administrator with ten years of continuous credited service with the School District, and who was between age fifty and sixty-five, may apply for early retirement benefits. The Plan's benefits were calculated on a percentage of the applicant's salary, with the salary percentage decreasing as the age of the applicant increased.

A provision of the Plan titled "Request for Early Retirement" provided, in relevant part:

A teacher or administrator seeking benefits of this plan will notify the Superintendent of Schools in writing, before April 15 of the year of intended retirement. * * * The board will act and make their decision known to the teacher or administrator before May 15.

The board, in its sole discretion, maintains the right to accept or deny any request for applicants that have not reached age 65.

Each year, the School District's Board of Trustees (Board) conducted contract negotiations with the Sweetwater Education Association (SEA), the negotiating agent for the certified employees in the school district. From 1983 through the 1991–1992 school year, the Plan was part of each negotiation agreement. During the fall of 1991, however, the Board's attorney advised the Board that the salary rate schedule in the Plan violated the ADEA, which was amended by the OWBPA in 1990.

Due to the concerns of the Board regarding the legality of the Plan's early retirement benefit schedule, the Board and the SEA agreed to reopen negotiations in November 1991 for the purpose of resolving these concerns. The negotiations proceeded with representatives from both the Board and the SEA.

Before the deadline for early retirement requests, at a Board meeting on March 9, 1992, the Board members expressed their opinions regarding the legality of the early retirement benefits. The minutes of the Board meeting record the following:

Each member stated that, after information received from the school attorney, they felt the present System was illegal and in good faith could not approve any of the requests that have been submitted at this time. Either new information will have to be presented showing that the present policy is legal or a new policy will have to be implemented.

After this meeting, the Board and the SEA continued negotiations and, by April 7, 1992, they agreed on modifications which would remove the discriminatory elements from the Plan. The only remaining issue was the salary percentage on which to base the benefits.

Each year, the Board submitted a budget which included funds earmarked for early retirement benefits under the Plan. The amount budgeted for early retirement benefits for the 1991–1992 school year totaled approximately $330,000.00. As of April 1, 1992, nineteen requests for early retirement benefits were submitted to the Board, including those of appellants.

Prior to 1992, the School District had approved all requests for early retirement benefits. However, all parties to the negotiations agreed that the budgeted funds were inadequate to finance all early retirement requests at a salary percentage rate equivalent to the old schedule. In response to this dilemma, the Board suggested several alternative salary percentages. The Board's proposals ranged from a rate of fifty-five percent, whereby all applicants could receive benefits, to a rate of ninety percent, which would fund two-thirds of the applicants. Rejecting the Board's suggestions, the employees requested the percentage rate be 118%, knowing that this rate would allow funding for fewer than half of the submitted applications. The Board agreed, and on April 13, 1992, the Board and the SEA ratified the Revised Retirement Severance Incentive For 1991–92 (Revised Plan).

The Revised Plan did not supply a method for determining which applicants would receive benefits, but provided:

> Participation in this Plan is considered a privilege and not a right, and the Board of Trustees is entitled to permit or to limit participation and to change or delete all or any part of this Plan in its sole discretion, in accordance with the needs and best interests of the District and in accordance with applicable law.

After consideration of the number of applicants, the limited funds, and the terms of the Revised Plan, the Board decided to approve benefits for those applicants with the largest total of years in service plus age. On April 27, 1992, the Board approved eight of the nineteen applications. Appellants, all fifty years old with between eleven and twelve years of credited service, were denied.

Appellant Peterson filed a *pro se* complaint against the school superintendent and the individual Board members on December 28, 1993, alleging breach of contract and tortious interference with contract. At the hearing on the appellees' motion to dismiss on April 28, 1994, appellant Peterson admitted she had not provided notice of her claims pursuant to the Governmental Claims Act. The district court dismissed the claims without prejudice.

Appellant Peterson subsequently refiled her *pro se* complaint on December 12, 1994, this time naming the School District as a defendant as well as the same individuals she had claimed against in her original complaint. In June 1995, appellants Dennis and Marcia Giere filed a motion to intervene as *pro se* plaintiffs, which was granted by the district court on June 6, 1995.

On June 21, 1995, during argument on appellees' motion for summary judgment,[1] the district court allowed appellant Peterson to add claims for promissory estoppel and civil rights violations. After supplemental briefing, the district court entered an order on October 13, 1995 granting appellees' motion for summary judgment on all claims. From that order, appellants now appeal.[2]

## III. STANDARD OF REVIEW

Summary judgment is properly granted based upon dual findings that there is no genuine issue of material fact and that the prevailing party is entitled to judgment as a

---

1. Dennis and Marcia Giere did not participate in the summary judgment proceedings.

2. Appellant Peterson attended law school during the pendency of this litigation and was licensed to practice law at the time of filing this appeal. She represents Dennis and Marcia Giere on appeal.

matter of law. *Teton Plumbing and Heating, Inc. v. Board of Trustees, Laramie County School Dist. No. One,* 763 P.2d 843, 847 (Wyo.1988). We evaluate the propriety of summary judgment with the same standards and materials used by the district court, affording no deference to the district court's decision on the issues of law. *Kahrs v. Board of Trustees for Platte County School Dist. No. 1,* 901 P.2d 404, 406 (Wyo. 1995). Our examination of the record is from the vantage point most favorable to the non-moving party, allowing all reasonable inference which may be fairly drawn from the record. *Id.* Factually unsupported allegations and conclusory statements, however, are not sufficient to defeat summary judgment. *Board of County Com'rs of County of Laramie v. Laramie County School Dist. Number One,* 884 P.2d 946, 956 (Wyo.1994) (*quoting Jones Land and Livestock Co. v. Federal Land Bank of Omaha,* 733 P.2d 258, 263 (Wyo.1987)). If the record reveals any proper legal theory on which summary judgment may be granted, we will affirm the district court. *Century Ready–Mix Co. v. Campbell County School Dist.,* 816 P.2d 795, 799 (Wyo.1991).

## IV. ANALYSIS

### A. CLAIMS FOR BREACH OF CONTRACT AND PROMISSORY ESTOPPEL

■ The dispositive issue on appellants' claims based on contract is whether they complied with the notice requirements mandated by the Wyoming Governmental Claims Act, Wyo.Stat. §§ 1–39–103(a)(vii) and 1–39–104(a) (1988 & Cum.Supp.1996). Wyo.Stat. § 1–39–113(a) (Cum.Supp.1996) sets forth the mandatory notice requirements which are a prerequisite for bringing suit based on tort or contract against a governmental entity:

(a) No action shall be brought under this act against a governmental entity unless the claim upon which the action is based is presented to the entity as an itemized statement in writing within two (2) years of the date of the alleged act * * *.

Failure to comply with this provision is an absolute bar to appellants' claims. *Vigil v. Ruettgers,* 887 P.2d 521, 524 (Wyo.1994); *Duran v. Board of County Com'rs of Sweetwater County,* 787 P.2d 971, 972 (Wyo.1990).

Appellants have not met the notice requirement. The Board denied appellants' applications for early retirement benefits on April 27, 1992. Appellant Peterson admitted to the district court she had not complied with the notice requirement on April 28, 1994, over two years after the Board had denied her early retirement benefits. It is undisputed that the Board did not receive notice of appellant Peterson's claim until May 4, 1994, and the Gieres' notice was received on May 13, 1994.

Notwithstanding this record, appellants state that their notice was timely because their contracts with the School District are based on the school year. Appellants contend that their claims did not accrue until the contractual period expired in June 1992. We disagree.

Wyo.Stat. § 1–39–113(a) expressly states that a claim accrues *on the date of the alleged act.* There is an exception, however, when contractual terms creating a condition precedent must be exhausted prior to seeking redress with the court. *Weston County Hosp. Joint Powers Board v. Westates Const. Co.,* 841 P.2d 841, 848–49 (Wyo.1992). In *Weston,* we held that a contractual provision which required the parties to submit all claims to arbitration created a condition precedent which must be exhausted before the claim accrued. *Id.* at 848–49.

*Weston* does not save appellants' claims in this case. Unlike the situation in *Weston,* the Board's denial of appellants' applications was a final decision which triggered appellants' right to claim on the contract. Appellants presented no contractual term which created an impediment to their access to the court. Therefore, appellants claim accrued on April 27, 1992, the date the Board denied their applications for early retirement benefits. Because appellants did not submit a written claim to the Board within two years of the Board's alleged act, the district court lacked jurisdiction and these claims must be dismissed.

### B. CLAIMS UNDER ADEA

■ Appellant Peterson failed to establish a prima facie case on her ADEA claim. It is elementary that in order to present a *prima facie* case of age discrimination under ADEA, plaintiff must show that the Board's policy offered a benefit to some employees, but withheld the same benefit from *older* employees based on age. *Tusting v. Bay View Federal Sav. and Loan Ass'n*, 789 F.Supp. 1034, 1037 (N.D.Cal.1992).

Appellant Peterson ignores this requirement, instead arguing that the Board's decision to exercise its discretion was a *prima facie* violation of ADEA. In sole support of this contention, appellant Peterson relies on federal regulation 29 C.F.R. 1625.10(c) (July 1, 1995), which states in part:

> Where a discriminatory provision is an optional term of the plan, it permits individual, discretionary acts of discrimination, which do not fall within * * * [ADEA's] [§ 623](4)(f)(2) exception.

Contrary to appellant Peterson's interpretation, nothing in this regulation or in the language of ADEA precludes an employer from exercising non-discriminatory discretion in the application of early retirement benefits. Neither does the regulation allow appellant Peterson to claim under ADEA without showing the existence of a discriminatory act.

The Board's March 1992 decision to delay its approval of early retirement requests was equally applied to all requests which were submitted at that time. Thus, there can be no claim that the delay was based on age discrimination. *See Tusting*, 789 F.Supp. at 1037 (if a plan change had ordered an immediate across the board elimination of benefits, irrespective of age or seniority, plaintiffs could not argue the change violated ADEA). Likewise, appellant Peterson cannot claim age discrimination when the Board determined, under the Revised Plan, to award the benefits to the oldest applicants with the greatest number of years in service. "The ADEA has never been construed to permit younger persons to claim discrimination against them in favor of older persons." *Parker v. Wakelin*, 882 F.Supp. 1131, 1140 (D.Me.1995). Therefore, summary judgment in favor of appellees on this claim is appropriate.

### C. DUE PROCESS

■ A cause of action is created by 42 U.S.C. § 1983 for the deprivation, under color of state law, of rights guaranteed by the United States Constitution or laws. *Teton Plumbing and Heating, Inc,* 763 P.2d at 847. The elements of a claim under 42 U.S.C. § 1983 are: " '(1) that the conduct complained of was engaged in under color of state law, and (2) that such conduct subjected the plaintiffs to a deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States.' " *Teton Plumbing and Heating, Inc.,* 763 P.2d at 847 (*quoting Schultz v. Palmberg,* 317 F.Supp. 659, 661 (D.Wyo.1970)). The Fourteenth Amendment, in pertinent part, states: "nor shall any State deprive any person of life, liberty, or property, without due process of law * * *." U.S. Const. amend XIV, § 1.

■ Appellants claim that the Board's refusal to approve their applications for early retirement benefits in March 1992 denied them of "a property right without due process of law." This claim fails for two reasons. First, as explained above, the record contradicts appellant Peterson's allegation that the Board denied her request for early retirement benefits in March 1992. Second, appellant Peterson failed to establish any protected property right in the early retirement benefits.

■ " 'In order to have a property interest in a government benefit, * * * the party making the claim must show that it has a legitimate claim of entitlement.' " *Teton Plumbing and Heating, Inc.,* 763 P.2d at 849 (*quoting American Conveyor Corp. v. Municipality of Guanica,* 614 F.Supp. 922, 930 (D.C.Puerto Rico 1985)). While legitimate retirement expectations may constitute property rights that may not be deprived without due process of law, *Parker,* 882 F.Supp. at 1138 (*quoting Spiller v. State,* 627 A.2d 513, 517 n. 2 (Me.1993)), the right to payment of benefits before normal retirement age must be found in pertinent employment agreements. *Sutton v. Weirton Steel Div. of Nat.*

*Steel Corp.,* 724 F.2d 406, 410 (4th Cir.1983), *cert. denied,* 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984). Therefore, we turn to the provisions of the plan in effect at the time the Board made its decision.

In this case, the Board's determination to deny appellants' requests for early retirement benefits was made on April 27, 1992 under the Revised Plan. Appellant Peterson argues that the revisions to the Plan adopted in April 1992 do not apply to her claim because the modification took place after she had relied on the provisions of the original contract. We need not decide that question, however, because under the provisions of the earlier Plan or the Revised Plan, the result is the same.

■ Appellant Peterson admits that both versions of the Plan contain provisions which expressly condition the legitimate expectation of benefits on the Board's *approval* of their request. To avoid the consequences of these provisions, appellant Peterson contends that the Board waived its discretionary power by failing to deny any applications prior to 1992. This argument fails for the simple reason that appellant Peterson did not explain how the Board's approval of early retirement to previous applicants established that the Board did not use its discretion in approving those requests. Appellant Peterson presented no evidence that the Board failed to consider financial and legal issues in prior years when approving early retirement benefits. Therefore, the Board's previous decisions did not waive its discretionary powers to refuse to approve all requests for early retirement. *See Hackett v. Pension Ben. Guaranty Corp.,* 486 F.Supp. 1357, 1363 (D.C.Md.1980).

It is undisputed that the written terms of the Plan as adopted in 1991 and as revised in 1992 conditioned appellant Peterson's property interest on the Board's approval of her request for early retirement benefits. Therefore, appellant Peterson had no protected property interest at the time the Board denied her request. Consequently, we affirm the district court's grant of summary judgment in favor of appellees on this issue.

**D. EQUAL PROTECTION**

■ Appellants assert that the Board's approval of requests for benefits on the basis of age plus years in service violated their right to equal protection under the law. We need not address this claim, as appellants failed to present this issue with cogent argument or pertinent authority. This court has consistently summarily affirmed cases or issues in cases that lack these elements. *Hamburg v. Heilbrun,* 891 P.2d 85, 87 (Wyo.1995) (and cases cited thereto).

Moreover, an equal protection claim requires the claimant to allege a classification made by the state that treats similarly situated people differently. *Smith v. Board of County Com'rs of County of Sublette,* 891 P.2d 88, 91 (Wyo.1995) (*quoting Kautza v. City of Cody,* 812 P.2d 143, 147 (Wyo.1991)). Appellants failed to allege any type of classification supported by the record.

For these reasons, we hold that summary judgment in favor of appellees is appropriate on the equal protection claim.

**E. MOTIONS FOR SANCTIONS**

Appellants request that we rule on the cross motions for sanctions which were left undecided by the district court. We decline to address this issue as it is not properly on appeal. *Stone v. Stone,* 842 P.2d 545, 547 (Wyo.1992).

**V. CONCLUSION**

Appellants failed to comply with the Wyoming Governmental Claims Act's notice requirement, and, therefore, the claims based on contract are dismissed for lack of jurisdiction. We affirm summary judgment in favor of appellees on the remainder of appellants' claims.