944 F.2d 658
 14 Employee Benefits Cas. 1682
 Cecil L. WILLIAMS, Joel Morgan Bryan, Peter E. Carnute,
William Crum, Richard L. Gonzales, James Moretti, James P.
Payton, John L. Tennant, Robert A. Van Buren, and Frederick
W. Walker, Plaintiffs-Appellants,
v.
CATERPILLAR, INC., Caterpillar Retirement Income Plan,
Caterpillar Non-Contributory Pension Plan, Caterpillar Group
Insurance Plan, Caterpillar Benefit Funds Committee, Keith
Wheeler and Jack Ziegler, Defendants-Appellees.
 No. 89-16353.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 13, 1991.
Decided Sept. 25, 1991.
As Amended Nov. 1, 1991.
 
 Richard K. Grosboll, Maxine Auerbach, Neyhart, Anderson, Reilly & Freitas, San Francisco, Cal., for plaintiffs-appellants.
 William J. Dritsas, Seyfarth, Shaw, Fairweather & Geraldson, San Francisco, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before GOODWIN, THOMPSON and O'SCANNLAIN, Circuit Judges.
 O'SCANNLAIN, Circuit Judge:
 
 
 1
 Nine former, long-term employees of Caterpillar appeal from the district court's dismissal of their claims. They contend that the company's calculation of their pension and retiree medical benefits constitutes a breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461 (1988). We now affirm.
 
 
 2
 * Each of the appellants has devoted between seventeen and twenty-three years of service to Caterpillar as an employee of the company's original manufacturing plant in San Leandro, California. All began as hourly workers, and at various times, all received promotions to salaried management positions. As a result of economic setbacks and managerial cutbacks, however, all nine men were downgraded back to hourly positions during the early 1980's. According to appellants, the company repeatedly promised that the demotions were only temporary and that they would soon be reinstated as salaried employees, but all nine were either terminated or forced to seek work elsewhere when the company closed the San Leandro plant in April 1985 and declined to grant them transfers.
 
 
 3
 In March 1987, after it became clear to appellants that they were not receiving the pension and medical benefits to which they believed they were entitled, they filed the present action. In their first three claims, they contended that Caterpillar and its plan managers had breached their fiduciary duties under ERISA by improperly calculating and offsetting appellants' accrued benefits. In their fourth and fifth claims, they contended that the company and its plan managers had breached their fiduciary duties by misrepresenting the effect that the demotions would have on appellants' benefits. In their sixth claim, appellants alleged that appellees had failed to fulfill their duty to provide certain information about the various benefits. And in their seventh claim, appellants claimed that the company had illegally penalized them for and had interfered with the exercising of their ERISA rights.
 
 
 4
 The district court granted a tentative partial summary judgment for Caterpillar[1] on the first three claims on November 4, 1988. On January 24, 1989, the court deemed its ruling on those claims final, leaving open for consideration one issue relating to the third claim. The court disposed of that issue with an oral ruling from the bench on July 21, 1989, and on September 5, 1989, the court granted summary judgment for appellees on the remaining four claims. 720 F.Supp. 148. Shortly thereafter, on September 21, the court entered final judgment on the entire action, and appellants then filed this timely appeal.
 
 II
 
 5
 As an initial matter, we must clarify some lingering confusion over our standard of review.
 
 
 6
 The district court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986); Tzung v. State Farm Fire & Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989). An award of summary judgment is reviewed de novo. Id. at 1339.
 
 
 7
 These familiar standards apply as much to an ERISA action as they do to any other civil action. When the Supreme Court recently addressed "the appropriate standard of judicial review" to be applied in ERISA cases, it did not alter--or even address--these familiar standards. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 105, 109 S.Ct. 948, 951, 103 L.Ed.2d 80 (1989). Firestone was concerned with the level of deference to be granted to ERISA fiduciaries upon judicial review in general, not with the level of deference to be granted to district courts upon appellate review. The Court held that an ERISA fiduciary's denial of benefits to an ERISA participant or beneficiary "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id. at 115, 109 S.Ct. at 956.
 
 
 8
 Accordingly, where a court finds that a plan in question leaves no room for fiduciary discretion, it must review a fiduciary's interpretations of eligibility under the plan pursuant to the strict "de novo standard" that applies in the law of trusts. See id. at 110-15, 109 S.Ct. at 953-57; Jones v. Laborers Health & Welfare Trust Fund, 906 F.2d 480, 481 (9th Cir.1990). Where, on the other hand, it finds that a plan contemplates discretionary determinations, it must review a fiduciary's eligibility decisions under the plan for an abuse of discretion. See Firestone, 489 U.S. at 111, 109 S.Ct. at 954; Jones, 906 F.2d at 481.
 
 
 9
 In short, whether the administration of a benefit plan complies with ERISA is a question of law reviewable de novo, and for purposes of that review, the degree of discretion to be afforded to the plan's fiduciaries is governed by Firestone's two-pronged rule. We must not confuse--as the litigants apparently have--the standards that apply to our review of the lower court's findings with the standards that apply to the lower court's review of appellees' conduct. See Kunin v. Benefit Trust Life Ins. Co., 910 F.2d 534, 536-37 (9th Cir.) (separately discussing these two standards of review), cert. denied, --- U.S. ----, 111 S.Ct. 581, 112 L.Ed.2d 587 (1990); Orozco v. United Air Lines, Inc., 887 F.2d 949, 951-52 (9th Cir.1989) (same).
 
 III
 
 10
 The heart of appellants' first three claims is that Caterpillar's pension program contains an illegal offset provision pursuant to which appellants' benefits were impermissibly reduced. To understand this provision and appellants' objections to it, one must first understand how Caterpillar's pension program works.
 
 
 11
 Employees at Caterpillar's San Leandro facility were eligible for benefits under either of two plans: the Non-Contributory (or "Union") Pension Plan or the Retirement Income (or "Management") Plan. The former was a defined benefit plan for the company's hourly employees, who were represented under a collective bargaining agreement with the International Association of Machinists. The latter was a defined benefit plan for the company's salaried, non-union employees. Originally, appellants were covered by the Union Plan, but after their promotions, their benefits accrued under the Management Plan. When they were demoted in the early eighties, however, they once again fell under the terms of the Union Plan.
 
 
 12
 To calculate the pension payable to an employee under the Union Plan, one multiplies the employee's years of service by eighteen dollars. Thus, a ten-year wage earner would be entitled to a monthly check of $180 during her retirement. The Management Plan, on the other hand, employs two formulas--the "final earnings formula" and the "credited service formula"--and it offers the participant whichever of the two resulting figures is greater. The parties agree that the final earnings formula produces a higher figure for appellants in this case. Under the pertinent terms of that formula, an employee's monthly pension is equivalent to the product of (a) his years of service "up to the date he was last employed as an Employee covered by the [Management] Plan" and (b) 1.5% of his average monthly compensation during the five of his final ten years for which he was most highly paid. Thus, a salaried employee who had ten years of management service and who had earned $2,500 per month in each of his final ten years would be entitled to receive $375 per month in retirement.
 
 
 13
 Although one might expect that appellants would receive benefits under the Union Plan for their years of hourly service and benefits under the Management Plan for their years of salaried service, Caterpillar did not structure its plans that way. Rather, the company dovetailed the two plans so that a retired employee would receive whatever benefits he had a right to receive under a single, integrated system. The effect of this dovetailing is the subject of appellants' complaint. Specifically, they challenge section 5.4 of the Union Plan, which states in part:
 
 
 14
 The amounts otherwise payable to a retired employee pursuant to the [eligibility provisions of this Plan] shall be reduced by ... (a) The retirement income, if any, under the Retirement Income [or Management] Plan, ... to which he is entitled
 
 
 15
 ....
 
 
 16
 Appellants claim that this provision (and hence, Caterpillar's calculation of their benefits) violates ERISA. In particular, they contend that the offset works an impermissible forfeiture of "nonforfeitable" vested benefits in violation of ERISA's minimum accrual requirements. See 29 U.S.C. § 1002(19) (1988) (defining "nonforfeitable"); id. § 1054 (setting forth minimum accrual requirements).
 
 
 17
 To understand appellants' complaint, one must understand how Caterpillar has interpreted and implemented the dovetailing inherent in the two plans. Under Caterpillar's calculations, each appellant became eligible for benefits under the Management Plan on the date of his promotion to a salaried position, and every year of service prior to that date qualified for purposes of that Plan's final earnings formula. Thus, using appellant Gonzales as an example, an employee hired in January 1969, promoted in November 1973, demoted in January 1984, and terminated in January 1985 was credited with fifteen years (1969-84) of Management Plan service, not with the ten and one quarter years (1973-84) of actual management service. See Appendix A. In this respect, Caterpillar's calculations were perhaps more generous than they had to be.
 
 
 18
 The company, however, did not give appellants credit under the Management Plan for the years of service that they devoted to the company after their demotions. As that plan's terms provide, an employee is only owed credit under the plan for years of service "up to the date he [i]s last employed as an Employee covered by the Plan." In short, Caterpillar interpreted and implemented the Management Plan retrospectively to cover the years of service that preceded appellants' promotions, but it did not interpret and implement the Plan prospectively to cover the final years of service that followed their subsequent downgrades.
 
 
 19
 Turning to the Union Plan, Caterpillar calculated appellants' benefits--in accordance with the terms of that plan--simply by multiplying appellants' total years of service by the established rate of eighteen dollars. Pursuant to the integrated structure of the two plans, the company then proceeded to compensate appellants through whichever plan offered a higher sum, "offsetting" any benefits owed under the less advantageous plan entirely. In each appellant's case, the amount offered under the Management Plan exceeded the amount offered under the Union Plan, and all nine appellants have therefore received Management Plan pensions.
 
 
 20
 Although receiving the higher of these two figures would appear to be the result that appellants would want, appellants contend that even the Management Plan figure is impermissibly low. Because that plan did not give appellants credit for any years of service after their demotions, it does not literally compensate appellants for those years. Technically, appellants fell under the coverage of the Union Plan for their final years, but because that plan produced a lower figure and was "offset" by the Management Plan amount, appellants actually received no additional, incremental benefit allocable to those final years. In short, under Caterpillar's calculations, appellants would have received the very same pensions that they are now receiving if they had been eligible to retire and had retired on the dates on which they received their demotions, rather than one to five years later.
 
 
 21
 The case of appellant Gonzales again serves as an illustrative example. Caterpillar calculated Gonzales's benefits under the Management Plan by multiplying the fifteen years of service eligible for inclusion under that Plan by the appropriate rate of compensation. The company then calculated his benefits under the Union Plan by multiplying his entire tenure of seventeen years by eighteen dollars. The Management Plan produced a higher figure, even though it did not incrementally compensate Gonzales for his final two years of service. See Appendices A-B.
 
 
 22
 Whether these calculations are unfair to appellants is a rather subjective question. On one hand, it seems unfair that an employee would not receive an additional increment of compensation for every additional year of service. As a simple matter of arithmetic, however, if the Management Plan had not been so "generous" in crediting as management years all of appellants' years of service prior to their promotions, then the Union Plan would have produced a comparatively greater benefit for some appellants, and although they would then be receiving an increment of compensation for every year of service, they would also be receiving less total compensation than they are receiving now.
 
 
 23
 Whether it is unfair or not, appellants contend that Caterpillar's scheme violates the requirements of ERISA. In support of their argument, they point to numerous provisions--both in ERISA and in the Internal Revenue Code--that require that every year of an employee's service be taken into account in calculating the employee's pension benefits. See 29 U.S.C. § 1052(b)(1) (stating that subject to certain exceptions not relevant here, "all years of service with the employer or employers maintaining the plan shall be taken into account in computing the [employee's] period of service for purposes of [satisfying ERISA's minimum participation standards]"); id. § 1053(b)(1) (stating that subject to certain exceptions not relevant here, "[i]n computing the period of service under the plan for purposes of determining the [employee's] nonforfeitable percentage [under ERISA's minimum vesting standards], all of an employee's years of service with the employer or employers maintaining the plan shall be taken into account"); cf. I.R.C. §§ 410(a)(5), 411(a)(4) (stating same as requirements for pension plans seeking deferred tax status under I.R.C. § 401).
 
 
 24
 As appellees point out, however, the Caterpillar plans do take all of appellants' years of service into account. It only appears otherwise because of the offset provision: the Union Plan, which credits appellants for 100% of the time they have devoted to the company, would yield a lower pension benefit than the Management Plan, which does not, and so pursuant to the offset, Caterpillar has given appellants the greater Management Plan amount. Appellants, in short, have incorrectly attempted to apply the minimum accrual rules after the offset was made, rather than before. See 29 U.S.C. § 1054 (setting forth minimum accrual requirements).
 
 
 25
 Appellants attempt to rebut this reasoning by contending that the offset provision itself violates ERISA. For support, they point to the Supreme Court's decision in Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), as well as various revenue rulings by the Internal Revenue Service. In Alessi, the Supreme Court held that pension plan provisions that offset benefits derived from workers' compensation laws do not violate ERISA's nonforfeiture rules or impermissibly erode an employee's vested pension benefits. Id. at 509-21, 101 S.Ct. at 1899-905; see also id. at 514, 101 S.Ct. at 1902 (noting that ERISA expressly allows offsets for benefits received under the Social Security and Railroad Retirement Acts). Appellants contend that the narrowness of the Court's holding and the fact that the offsets in question were for benefits derived from public sources implies that the offset here is not permissible.
 
 
 26
 This argument misses the mark for two reasons. First, Alessi is not directly on point, and second, to the extent that it is on point, its reasoning supports Caterpillar's position. In Alessi, the question was whether benefits derived from sources external to the pension plan itself could be offset against amounts owed under the plan. Here the question is whether the plans alone have fairly and legally calculated the employees' benefits. The "offset" at issue in this case "is itself part of the formula for determining the amount of [appellants'] pension payments;" it is not a subsequent deduction from that sum. Vintilla v. United States Steel Corp. Plan for Employee Pension Benefits, 606 F.Supp. 640, 643 (W.D.Pa.1988) (holding that a pension plan offset for severance payments is legal under Alessi ), aff'd mem., 782 F.2d 1033 (3d Cir.), cert. denied, 475 U.S. 1141, 106 S.Ct. 1791, 90 L.Ed.2d 337 (1986).
 
 
 27
 In a sense, therefore, the present dispute does not really concern an offset in the Alessi sense at all, but rather the formula by which appellants' pensions were determined. In Alessi, the Supreme Court recognized that ERISA gives employers broad discretion in defining those formulas:
 
 
 28
 Retirees rely on [ERISA's] sweeping assurance that pension rights become nonforfeitable in claiming that offsetting those benefits with workers' compensation awards violates ERISA....
 
 
 29
 Despite this facial accuracy, retirees' argument overlooks a threshold issue: what defines the content of the benefit that, once vested, cannot be forfeited? ERISA leaves this question largely to the private parties creating the plan. That the private parties, not the Government, control the level of benefits is clear from the statutory language defining nonforfeitable rights as well as from other portions of ERISA.... [T]he statutory definition of "nonforfeitable" assures that an employee's claim to the protected benefit is legally enforceable, but it does not guarantee a particular amount or a method for calculating the benefit. As we explained last Term, "it is the claim to the benefit, rather than the benefit itself, that must be 'unconditional' and 'legally enforceable against the plan.' "
 
 
 30
 Alessi, 451 U.S. at 511-12, 101 S.Ct. at 1900-01 (quoting Nachman Corp. v. Pension Benefit Guar. Corp., 446 U.S. 359, 371, 100 S.Ct. 1723, 1731, 64 L.Ed.2d 354 (1980)) (emphasis added). Writing for a unanimous Court, Justice Marshall further explained that "[i]t is particularly pertinent for our purposes that Congress did not prohibit 'integration,' a calculation practice under which benefit levels are determined by combining pension funds with other income streams available to the retired employee[ ]." Id. at 514, 101 S.Ct. at 1901; see Holliday v. Xerox Corp., 732 F.2d 548, 551 (6th Cir.) (quoting same passage as support for holding that an employer could offset benefits owed under one pension plan by benefits owed under another), cert. denied, 469 U.S. 917, 105 S.Ct. 294, 83 L.Ed.2d 229 (1984).
 
 
 31
 As Caterpillar correctly points out, courts have uniformly relied on Alessi to uphold the formulas by which employers compute the amount of their employees' benefits, so long as the pension plans in question satisfy ERISA's guidelines. See Employee Benefits Comm. v. Pascoe, 679 F.2d 1319, 1321 (9th Cir.1982) (citing Alessi for the proposition that under ERISA "the amount of benefits provided under a pension plan is specifically left to the determination of the parties through the collective bargaining process") (emphasis in original); see also De Nobel v. Vitro Corp., 885 F.2d 1180, 1192 (4th Cir.1989) (citing Alessi for the proposition that ERISA's definitional provisions establish no right "to have benefits payments computed in a given way"); Roper v. Pullman Standard, 859 F.2d 1472, 1476 (11th Cir.1988) (appendix) (citing Alessi for the proposition that "[t]he decision as to what pension benefits will be provided in a pension plan is left to the private parties creating the plan").
 
 
 32
 In short, appellants have not identified or demonstrated a substantive ERISA violation in the calculation of their benefits. The Caterpillar pension plan fiduciaries have interpreted and implemented the two plans at issue in accordance with their literal terms, and to the extent that the plans allow for discretion in the calculation of appellants' benefits, the fiduciaries have not abused that discretion. See Firestone, 489 U.S. at 110-15, 109 S.Ct. at 953-57 (articulating standards for judicial review of an ERISA fiduciary's actions under 29 U.S.C. § 1132(a)(1)(B)); see also supra Part II. We therefore affirm the district court's grant of summary judgment for appellees on the first three claims.
 
 IV
 
 33
 In their fourth claim, appellants charge the company with misrepresentation. Section 404 of ERISA provides in part that:
 
 
 34
 a fiduciary shall discharge his duties with respect to a [covered employee benefits] plan solely in the interest of the participants and beneficiaries and--
 
 
 35
 (A) for the exclusive purpose of:
 
 
 36
 (i) providing benefits to participants and their beneficiaries; and
 
 
 37
 (ii) defraying reasonable expenses of administering the plan.
 
 
 38
 29 U.S.C. § 1104(a)(1)(A) (1988). As part of their duty, ERISA fiduciaries must inform plan participants and beneficiaries about the nature of their coverage. Id. §§ 1021-1030. Appellants allege that Caterpillar breached this duty by providing misleading information and by failing to communicate material facts about appellants' benefits. Specifically, appellants claim that Caterpillar (1) failed to inform appellants adequately about the consequences of remaining in an hourly position until their termination; (2) misled appellants by stating that all of their years of service would count toward their pension benefits; (3) misled appellants into believing that after their downgrade, appellants would continue to earn the same benefits as before the downgrade; (4) assured appellants that their downgrades were temporary; (5) assured appellants that the San Leandro plant would not close; and (6) failed to provide appellants with an adequate summary of the offset provision.
 
 
 39
 We do not reach the merits of appellants' contentions, however, because we conclude as a threshold matter that appellants have failed to state a claim here. Appellants insist that as plan participants they are entitled to bring an action against Caterpillar for the misrepresentations that the company allegedly made to them. Caterpillar, on the other hand, asserts that a fiduciary's duty under ERISA runs to the plan as a whole and not to the individual beneficiary. The weight of prior case law supports Caterpillar's position. See, e.g., Local Union 2134, United Mine Workers v. Powhatan Fuel, Inc., 828 F.2d 710 (11th Cir.1987).
 
 
 40
 In Local Union 2134, the Eleventh Circuit stated that when an ERISA fiduciary makes misrepresentations to employees regarding their pension plan benefits, he "breache[s] his fiduciary duty to the health plan." Local Union 2134, 828 F.2d at 713 (emphasis added). Although the court acknowledged a cause of action for breach of fiduciary duty based on alleged misrepresentations, it premised that acknowledgment on an understanding that the misrepresentations in question, if proven, had harmed the entire plan. Here, appellants have not alleged that Caterpillar's purported misrepresentations were detrimental to all claimants under either of the plans in question; they have sued only on their own behalf.
 
 
 41
 Furthermore, the Supreme Court has held that equitable relief under ERISA is limited to relief protecting the integrity of the plan as a whole and does not extend to individual plan participants. See Massachusetts Mut. Life Ins. v. Russell, 473 U.S. 134, 140-44, 105 S.Ct. 3085, 3089-91, 87 L.Ed.2d 96 (1985); see also Sokol v. Bernstein, 803 F.2d 532, 536 (9th Cir.1986).
 
 
 42
 To elude the implication of these decisions, appellants insist that they have alleged wrongs that affect the plan as a whole. They claim that because they received no additional benefits for their final years of service, Caterpillar's contributions to the pension plans on their behalf during those years remain in the corpus of those trusts. They claim that Caterpillar's future contributions to the plans have been decreased as a result of the company's failure to pay them the appropriate amount of benefits. Accordingly, appellants contend, Caterpillar has reaped financial benefits to the plan's detriment. Because we have already held, however, that Caterpillar's calculations do indeed confer upon appellants all of the benefits to which they are legally entitled, see supra Part III, this argument necessarily fails. Moreover, we fail to perceive how the alleged detriment to the plan as a whole is in any way a detriment to anyone other than appellants themselves. Nor do we perceive how the alleged detriment can in any way be related to the alleged misrepresentations complained of in appellant's fourth claim.
 
 V
 
 43
 Appellants' fifth claim challenges the company's handling of their retiree medical benefits. Appellants do not dispute that when they left Caterpillar they were covered by the terms of the company's Union Plan. As such, Caterpillar contends that appellants could potentially qualify for medical benefits only under the corresponding Union Medical Plan ("UMP"). Appellants, on the other hand, insist that because they had vested rights in the Management Plan, they should receive medical benefits under the corresponding Management Medical Plan ("MMP").
 
 
 44
 As the district court found, however, appellants fail to qualify for medical benefits under either plan. To qualify for retiree medical benefits under the UMP, one must have retired from active service, have ten years of credited service under the Union Pension Plan, and be eligible for immediate commencement of a monthly pension. Appellants argued below that they qualified for UMP benefits because at some future date they would have retired from active service. Laid-off employees, however, do not qualify for retirement under the UMP; only employees in active service on the day before their retirement can qualify. Appellants do not satisfy this condition.
 
 
 45
 Likewise, appellants fail to qualify for the medical benefits included in the special plant closure benefits negotiated prior to the San Leandro plant closure. Those benefits require an hourly employee to have ten years of credited service and to be fifty years old on the date of his permanent layoff. None of appellants meet these requirements.
 
 
 46
 Under ERISA, absent an express conflict with federal law, courts cannot review the terms of a collectively bargained medical plan. United Mine Workers Health & Retirement Funds v. Robinson, 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982); White v. Distributors Ass'n Warehousemen's Pension Trust, 751 F.2d 1068, 1070-72 (9th Cir.1985). The eligibility requirements in both of Caterpillar's plans arose from negotiations between Caterpillar and appellants' union.[2] Appellants have not shown that these terms violate any federal law.
 
 
 47
 Appellants argument that they are entitled to medical benefits under the MMP similarly fails. By its plain terms, the MMP only covers retired employees who were full-time salaried employees on the day immediately preceding their retirement. Appellants fail to meet this Management Plan eligibility requirement. Appellants also fail to qualify for the MMP because they were not immediately entitled to the commencement of a pension under the Management Plan.
 
 
 48
 Finally, appellants allege that Caterpillar breached its fiduciary duties by adopting eligibility rules that are arbitrary and capricious. Appellants claim that the medical plan rules deprive them of benefits and therefore are "structurally defective" in violation of section 404 of ERISA. Section 404 requires that trustees with discretion in establishing benefit conditions act solely within the interests of participants and beneficiaries. 29 U.S.C. § 1104(a)(1) (1988). Appellants argue that because their termination was involuntary, they could not have met the medical coverage requirement that employees remain at Caterpillar until age 55, as required by both the UMP and the MMP. Consequently, they argue that the eligibility rules are arbitrary and capricious.
 
 
 49
 Specifically, appellants argue that the rules should be invalidated under Lee v. Nesbitt, 453 F.2d 1309 (9th Cir.1972). Unlike the present case, however, Lee addressed the validity of a pension plan provision that stripped employees of vested pension benefits as a result of involuntary employment termination. Retiree medical benefits do not become vested once an employee becomes eligible or retires. See In Re White Farm Equip. Co., 788 F.2d 1186, 1193 (6th Cir.1986); Molnar v. Wibbelt, 789 F.2d 244, 250 (3d Cir.1986). Appellants are also incorrect in relying on Lee because Lee applies only to pension benefits, not to medical benefits. ERISA specifically excludes health benefits from the vesting and accrual requirements applicable to pension benefits. 29 U.S.C. § 1051(1) (1988). Thus, the issues addressed in Lee regarding denial of vested benefits are not in question here.[3]
 
 VI
 
 50
 In their sixth claim, appellants seek damages for the company's alleged failure to furnish summary descriptions of its pension and medical plans. Section 104(b) of ERISA provides that "[t]he administrator [of a pension plan] shall furnish to each participant ... a copy of [a] summary[ ] plan description ... within ninety (90) days after he becomes a participant." 29 U.S.C. § 1024(b)(1)(A) (1988). Under section 502(c):
 
 
 51
 [a]ny administrator ... who fails or refuses to comply with a request for any information which such administrator is required by [ERISA] to furnish to a participant or beneficiary ... may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.
 
 
 52
 Id. § 1132(c)(1) (emphasis added).
 
 
 53
 Appellants contend that Caterpillar failed to fulfill this statutory obligation to provide summary plan descriptions. The district court found, however, that appellants had failed to offer any proof--or even to allege--that they had ever requested any plan descriptions from appellees. Some courts have suggested that where a pension plan participant fails to make a specific request for the information at issue, he has no litigable claim under section 502(c). See Foltz v. U.S. News & World Report, Inc., 663 F.Supp. 1494, 1535-36 & n. 65 (D.D.C.1987), aff'd mem., 865 F.2d 364 (D.C.Cir.), cert. denied, 490 U.S. 1108, 109 S.Ct. 3162, 104 L.Ed.2d 1024 (1989); see also Blakeman v. Mead Containers, 779 F.2d 1146, 1151 n. 3 (6th Cir.1985) (reaching similar result with respect to ERISA section 104(b)). In any event, even if appellants had proven that they requested a description from appellees, the district court had discretion under the statute to refuse their request for relief. We cannot say that discretion has been abused.
 
 VII
 
 54
 Appellants' final claim is that Caterpillar violated section 510 of ERISA, which provides in part that:
 
 
 55
 [i]t shall be unlawful for any person to discharge, fine, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan [or under ERISA] ..., or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan [or under ERISA]....
 
 
 56
 29 U.S.C. § 1140 (1988). In support of this claim, appellants appear to have contended below that Caterpillar downgraded them to hourly status in order to avoid having to pay them any pension benefits for their final years of service. Appellants, however, have abandoned this argument on appeal, and we therefore decline to address it.
 
 VIII
 
 57
 Finally, we must determine whether either party is entitled to an award of costs or fees--either for the proceedings below or for this appeal. Section 502(g) of ERISA provides that "[i]n any action under [ERISA] (other than an action [for an employer's delinquent contributions] by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." Id. § 1132(g) (emphasis added). Both parties have requested an award of fees pursuant to this provision.
 
 
 58
 In its final judgment, the district court ordered the parties to bear their own fees and costs, and neither party has offered any argument to suggest why that decision may have constituted an abuse of discretion. Accordingly, we affirm the district court's denial of any such award. See Sokol, 803 F.2d at 538 ("Because ERISA commits the award of fees to the district court's discretion, its determination should be reversed only for abuse of that discretion.") (citing Hummel v. S.E. Rykoff & Co., 634 F.2d 446, 452 (9th Cir.1980)).
 
 
 59
 For purposes of determining whether to award fees and costs on appeal, we consider the same five factors identified by Sokol as relevant to an award of fees in the district court:
 
 
 60
 (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees against the opposing party would deter others from acting [similarly] under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.
 
 
 61
 Id. (citing Hummel, 634 F.2d at 452). The record reflects that this action represents a bona fide dispute over the proper interpretation and implementation of two integrated pension plans under the rules of ERISA. There are no proven allegations of bad faith; there is no illicit conduct to deter; and the positions of both parties are reasonably supported. Under these circumstances, we decline to award fees or costs to either party.
 
 IX
 
 62
 In light of the foregoing, we affirm the district court's grant of summary judgment for appellees on all grounds.
 
 
 63
 AFFIRMED.
 APPENDIX A 1
 Hire Date Hourly Transfer to Salary Downgrade to Hourly
Williams 12"6"65 1"30"77 6"2"80
Bryan 11"4"68 4"15"74 11"1"82
Carnute 2"10"64 9"22"74 4"5"82
Crum 2"25"63 3"26"73 6"7"82
Gonzales 1"2"69 11"11"73 1"30"84
Moretti 6"15"66 8"27"67 11"1"82
Payton 8"26"68 5"6"73 11"1"82
Tennant 12"9"63 9"9"73 6"7"83
Van Buren 6"27"66 1"17"71 11"28"71
 2"11"73 11"1"82
Walker 6"22"64 1"25"70 11"1"82
-------------------------------------------------------------------------------
 
 
 64
 Mgmt. Plan Years Layoff Date From Union Plan Credited
 of Service Hourly* Service
Williams 14.5 4"15"85 19.11
Bryan 13.11 1"2"85 17.3
Carnute 18.2 10"1"84 21.8
Crum 19.4 4"29"85 23.2
Gonzales 15.0 1"2"85 17.0
Moretti 16.4 10"1"84 19.2
Payton 14.2 1"2"85 17.5
Tennant 18.5 4"22"85 22.3
Van Buren 16.4 10"1"84 19.4
Walker 17.11 1"2"85 21.2
* 11 additional months of service added after layoff date.
1 This table appears in the record as Exhibit 3 to the Declaration of John
 L. Ziegler, Manager of Employee Benefits for Caterpillar, Inc. (Oct. 4,
 1988).
 
 
 65
 APPENDIX B 1
 Non"Contributory Retirement
 Pension Plan Income Plan
 (Union Plan) (Management
 Plan)
Williams 18 x 19.9167 " $358.50 1 1/2 x " $477.42
 $2207.70
 x 14.4167
Bryan 18 x 17.25 " 358.50 1 1/2 x " 477.42
 3137.82 x
 13.9167
Carnute 18 x 21.6667 " 390.00 1 1/2 x " 658.08
 2414.96 x
 18.1667
Crum 18 x 23.1667 " 417.00 1 1/2 x " 940.28
 3242.34 x
 19.3333
Gonzales 18 x 17 " 306.00 1 1/2 x " 588.29
 2614.64 x
 15
Moretti 18 x 19.0833 " 343.50 1 1/2 x " 631.58
 2577.87 x
 16.3333
Payton 18 x 17.4167 " 313.50 1 1/2 x " 631.63
 2972.36 x
 14.1667
Tennant 18 x 22.25 " 400.50 1 1/2 x " 602.55
 2171.36 x
 18.5
Van Buren 18 x 19.3333 " 348.00 1 1/2 x " 612.47
 2499.88 x
 16.3333
Walker 18 x 21.1667 " 381.00 1 1/2 x " 655.09
 2437.54 x
 17.9167
 1 This table appears in the record as Exhibit 3 to the Declaration of John
 L. Ziegler, Manager of Employee Benefits for Caterpillar, Inc. (Oct. 4,
 1988).
 
 
 
 [1]
 Because there is no need to distinguish among the appellees for purposes of this appeal, we use the terms "Caterpillar," "the company," and "appellees" interchangeably to refer to all the appellees collectively
 
 
 [2]
 Appellants contend that because there were no "informed and intense" negotiations between Caterpillar and the union specifically addressing benefits for downgraded employees, the Robinson bar to judicial review does not apply here. Appellants further argue that because appellants were downgraded managers, they were not represented in negotiations conducted on behalf of hourly workers generally. In Robinson, however, the Supreme Court concluded that "[t]here is no general requirement that the complex schedule of the various employee benefits must withstand judicial review under an undefined standard of reasonableness. This is no less true when the potential beneficiaries subject to discriminatory treatment are not members of the bargaining unit...." Robinson, 455 U.S. at 574, 102 S.Ct. at 1233. Consequently, even if downgraded employees' interests were not specifically represented by the union negotiators, under Robinson the plan's terms cannot be judicially reviewed
 
 
 [3]
 The problems addressed in Lee were subsequently remedied by statutory amendments that prohibit the forfeiture of vested benefits. See 29 U.S.C. § 1053(b)(3)(D) (1988)