Allen O. TUSTING, Marcia Tusting, Catherine M. Mainini, John Mainini, Leona M. Clothakis, and John Clothakis, Plaintiffs,

v.

BAY VIEW FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant.

No. C–89–1860 FMS.

United States District Court, N.D. California.

March 23, 1992.

David H. Fielding, Bushnell Caplan & Fielding, San Francisco, Cal., for plaintiffs.

Benjamin P. Klatsky, William A. Helvestine, Epstein Becker & Green, San Francisco, Cal., for defendant.

## ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANTS

FERN N. SMITH, District Judge.

### INTRODUCTION

The plaintiffs are three former employees of Bay View Federal Savings & Loan Association ("Bay View") and their spouses. In 1988, Bay View modified its program of retirement benefits. Plaintiffs allege that Bay View's 1988 changes in its retirement benefits violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634 (ADEA) and the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 (ERISA). Specifically, plaintiffs allege that the plan changes violated the ADEA by "constructively dis-

charging" older workers in violation of the ADEA and violated ERISA by tampering with vested benefits and penalizing workers for exercising their rights to participate in an ERISA benefit plan. They also allege that Bay View breached its fiduciary duty under ERISA. The Court finds on the undisputed factual record before it that the plan changes at issue violated neither the ADEA nor ERISA, and therefore grants summary judgment in favor of Bay View on all causes of action.[1]

## FACTUAL BACKGOUND

From 1976 to October 1988, Bay View's retirement plan offered retired employees who met certain minimum age and service requirements fully-paid medical benefits. From 1981 to October 1988, Bay View's plan also fully covered medical benefits for retiree's spouses.

In October 1988, Bay View amended its retirement plan as follows: (1) there would be no change in benefits for current retirees; (2) active employees who were eligible to retire could retain their fully-funded benefits upon retirement if they elected to retire by the end of 1989 (*i.e.*, within fourteen months of the date of the plan change); if these employees retired later, they could continue to receive medical coverage upon retirement at their own cost; (3) employees who were close to retirement age could, upon reaching retirement age, retire with medical benefits at their own cost; and (4) all other active employees could, upon reaching retirement age, retire with medical benefits at their own cost. Plaintiffs fell within the second of these groups.

According to Bay View, these plan changes were prompted by a proposed ruling by the Financial Accounting Standards Board (FASB) that would require the potential future cost of its health plan for future retirees to be listed as a current liability on Bay View's financial statements; because of the uncertain number of future participants and rising health care costs, Bay View's management was concerned that this would create accounting problems and hurt Bay View's financial picture.

The following month, in November 1988, in response to negative comments from employees regarding the plan changes, Bay View amended its retirement plan again. The revised plan provided that for those active employees who were then eligible to retire or close to retirement age (the second and third groups), Bay View would "continue to pay the same amount for retirement health benefits that it was paying for the employee whenever the employee chose to retire." Bay View asserts that this change was specifically intended to provide further incentives to remain as employees "since the defined benefit was expected to increase the longer the employee worked."[2]

All three of the plaintiff-employees elected to retire during the fourteen-month "grace period" before the announced plan changes became effective. They now assert that they would not have done so had it not been for the plan changes; that Bay View constructively discharged them based on illegal age-based criteria; and that Bay View's actions violated several provisions of ERISA.

## DISCUSSION

### I. THE ADEA CLAIMS

Plaintiffs allege that Bay View, through the retirement plan changes at issue, violated section 4(f)(2) of the ADEA, which provides:

---

1. In the alternative, Bay View seeks summary adjudication of issues regarding the availability of relief to plaintiff Allen O. Tusting. Because it grants summary judgment for Bay View on all causes of action, the Court finds it unnecessary to rule on the alternative motion and therefore declines to do so.

2. At the same time, also "in response to employee sentiment", it introduced an Employee Stock Ownership Plan (ESOP) for retirement-eligible employees and those close to retirement age. The ESOP accumulated value with an individual employee's length of service, thus, in Bay View's view, encouraging retirement-age employees to stay at work.

It shall not be unlawful for an employer

...

(2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such ... employee benefit plan *shall require or permit the involuntary retirement of any individual [between 40 and 70 years of age] because of the age of such individual*

.        .        .        .        .

29 U.S.C. § 623(f)(2) (emphasis added).

### A. The Plaintiffs' Prima Facie Case

█ Section 4(a)(1) of the ADEA makes it unlawful for an employer "to fail or refuse to hire or *to discharge* any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age" (emphasis added). Plaintiffs argue that the plan changes, by prospectively limiting retirement benefits, constructively discharged the plaintiffs. Section 4(f)(2), quoted above, operates as an exception to this prohibition and, because of the timing of the events at issue here, constitutes a further element of the plaintiffs' prima facie case under the ADEA.[3]

#### 1. The Plan Changes Are Not Facially Discriminatory

Several United States courts of appeals have held that, in general, early retirement programs, providing incentives to more senior workers to retire rather than to continue to work, do not create a prima facie case of age discrimination under the ADEA. *Bodnar v. Synpol, Inc.*, 843 F.2d 190 (5th Cir.), *cert. denied*, 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988); *Henn v. National Geographic Soc'y*, 819 F.2d 824 (7th Cir.), *cert. denied*, 484 U.S. 964, 108 S.Ct. 454, 98 L.Ed.2d 394 (1988); *Gray v. New England Tel. & Tel. Co.*, 792 F.2d 251 (1st Cir.1986); *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66 (6th Cir.1982).

█ The touchstone for legal early retirement plans is that they offer employees a genuine choice between two options—one being the status quo, the other being an early retirement plan that makes the recipient better off than under the status quo. *Henn v. National Geographic Soc'y*, 819 F.2d at 826.

On the other hand, the United States Supreme Court has held that a plaintiff states a prima facie case under the ADEA where a particular policy offers a benefit to some employees, but withholds the same benefit from older employees based on age. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). Such a policy is discriminatory "on its face." *Id.* at 121, 105 S.Ct. at 622.

If Bay View's 1988 plan change had ordered an immediate, across-the-board elimination of fully-paid retirement health benefits for all current employees, irrespective of age or seniority, plaintiffs could not (and do not, even hypothetically) argue that the plan change violated the ADEA. The aspect of the 1988 plan change that gives rise to the ADEA claim in this lawsuit is the "grace period" which allowed retirement-eligible employees to obtain the benefits offered under the old plan if they elected to retire within eighteen months.

The plaintiff's assertion that the 1988 plan changes were facially discriminatory under the ADEA because they differentiated between older and younger employees is superficially attractive, but does not withstand closer scrutiny. The facts of this

---

**3.** Section 4(f)(2) does not operate as an element of the prima facie case where "there is direct evidence of discrimination, such as when a provision is discriminatory on its face." *American Ass'n of Retired Persons v. Farmers Group, Inc.*, 943 F.2d 996, 1000 n. 7 (9th Cir.1991), *cert. denied*, ── U.S. ──, 112 S.Ct. 937, 117 L.Ed.2d 108 (1992). This Court's Order dated September 18, 1990 concluded that the plan was facially discriminatory in the context of a motion for leave to amend, which required the Court to take all allegations as true. The instant motion, by contrast, is based on a fully-developed evidentiary record and extensive briefing by both parties. To the extent that the September 18, 1990 Order, 1990 WL 255005, appears inconsistent with the conclusions in this Order, this Order is controlling.

case more closely resemble the early-retirement cases than they do the discrimination-in-benefits cases.

We look first to Bay View's decision to eliminate the fully-paid retirement health benefit. With the adoption of the 1988 plan changes, the reduced benefit became the "status quo" for *all* employees, regardless of age.

Next, we look at the "grace period." The grace period prospectively offered retirement-eligible employees the option of either continuing to work under the status quo conditions available to all other employees or retiring within an eighteen-month window and enjoying the more extensive health benefits available under the previous retirement plan. Much like an early-retirement plan, retirement-eligible employees could elect either the status quo or a "better" package of benefits than was available to other employees. This type of option, under the analysis set forth in *Henn* and its brethren, does not on its face offend the ADEA.

Here, the underlying benefit reduction confuses the issue, making it appear at first glance that the plaintiffs were offered a choice between retirement and "worse." A closer analysis reveals, however, that because that benefit reduction affected all Bay View employees irrespective of age, the 1988 plan change did not constructively discharge the plaintiffs and was not facially discriminatory.

### 2. The Record Lacks Persuasive Evidence of Discriminatory Intent

■ Where, as here, the policy or plan at issue is not facially discriminatory, the plaintiffs must, as part of their prima facie case, show evidence of discriminatory intent in adopting the plan changes. The Supreme Court's decision in *Public Employees Retirement System of Ohio v. Betts*, 492 U.S. 158, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989) governs this aspect of the plaintiffs' prima facie case.[4]

In *Betts*, the Supreme Court held that section 4(f)(2) does not operate as an affirmative defense (as several circuits had previously held), but rather as an element of the plaintiff's prima facie case. The employee thus bears the burden of showing that "the discriminatory plan provision actually was intended to serve the purpose of discriminating in some non-fringe benefit aspect of the employment relationship," such as hiring, firing, wages and salaries. *Id.* at 181, 109 S.Ct. at 2868. *See also, Robinson v. County of Fresno*, 882 F.2d 444 (9th Cir.1989) (affirming summary judgment in favor of employer where plaintiff had failed to demonstrate that "the change in benefits formula demonstrates an intent to discriminate in any nonfringe-benefits area," applying *Betts*).

Plaintiffs assert that the negative employee reactions to Bay View's October 1988 announcement of the plan changes (following which Bay View made further revisions in November) put Bay View on notice that some employees would retire, and that Bay View's knowledge that employees were unhappy with the plan changes constitutes sufficient evidence of Bay View's intent to discriminate. They allege that several Bay View management personnel made statements showing that they anticipated plaintiffs' resignations: for example, Senior Executive Vice President Richard St. Lezin stated that he "expected something like this" when Leona Clothakis handed in her resignation some months after initiating the instant action; Division Manager Robert Becker told Catherine Mainini that he had "bad news" about benefit reductions; Personnel Manager Pat Gregory witnessed employee Peggy Zanatta's tears when she learned of the plan changes.

Legally, plaintiffs argue, these statements establish that Bay View officials knew that the plaintiffs were contemplating resigning in response to the plan changes and that Bay View must be

---

4. *Betts* was later overruled by legislation that was expressly non-retroactive. Older Workers Benefit Protection Act, Pub.L. 101–433, 104 Stat. 978–83 (1990). The parties evidently agree that the new legislation does not apply. *See also American Ass'n of Retired Persons v. Farmers Group*, 943 F.2d 996, 1000 n. 6 (9th Cir.1991) (applying *Betts* retroactively).

deemed to intend the resignations it could foresee. They cite *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1154 (10th Cir.1990), where the Tenth Circuit held that a constructive discharge occurs where: "the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." The Court observed that if the employer could have foreseen the resignation under such circumstances, it could be deemed to have intended it.[5]

Plaintiffs' reliance on *Spulak* misses the mark. The standard for a finding of constructive discharge is not the same as the standard for a finding of intent to discriminate based on age. Moreover, as we have already stated, the facts here do not offer, as did the "choice" in *Spulak*, a choice between retirement and "worse."

Second, even accepting as true and relevant the alleged statements by Bay View officials (and Bay View does not deny that these statements were made), the Court must conclude as a matter of law that the proffered statements are too innocuous to constitute evidence of intent to discriminate.

Finally, that Bay View has not changed or reversed that policy in the years following the 1988 plan changes bespeaks its genuineness and finality when made.

Since they have failed to present persuasive evidence of discriminatory intent, plaintiffs have failed to marshall facts sufficient to make a prima facie case under section 4(f)(2) of the ADEA as governed by *Betts*.

### B. *Bay View's Business Justifications*

■ Even if the plaintiffs had made out a prima facie case under the ADEA, Bay View's legitimate business justifications for the 1988 plan changes would be sufficient to rebut the presumption of discrimination.

Under the ADEA, an employer may counter a plaintiff's prima facie case with evidence of "a legitimate, nondiscriminatory business reason for its conduct" as an affirmative defense. *Mitchell v. Mobil Oil Corp.*, 896 F.2d 463, 471 (10th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 252, 112 L.Ed.2d 210 (1990) (holding that though plaintiff had stated a prima facie case under the ADEA, he had not met his burden of overcoming Mobil's legitimate business justifications for its plan changes). To prevail, the employee must prove that the employer's proffered justification is "a mere pretext for discrimination," which the employee may do by showing that the employer's proffered explanation is "unworthy of credence." *Id.*

Bay View offers evidence that the proposed FASB ruling requiring it to list future retiree health plan payments as current liabilities, together with rising health insurance premiums, were the business reasons for the plan changes. Plaintiffs argue that these reasons are pretextual and unworthy of credence, asserting that the plan change did not result in "an increased ability to project costs of the health insurance nor a reduction in the actual cost of those benefits." Plaintiffs argue that given Bay View's decision to allow retirement-eligible employees to opt into the old plan within the "grace period," it was not necessary from an accounting perspective to require them actually to retire, because their retirement would not help Bay View control costs for these employees; therefore, they argue, Bay View's asserted cost-projection justification must be pretextual.

Plaintiffs' argument fails because it ignores the fact that the benefit reduction affected *all* current employees, not merely the plaintiffs or other retirement-eligible employees, who were a small minority of individuals affected. Bay View's "grace period" for retirement-eligible employees enabled it to offer its most senior employees the option of electing fully-paid retirement health benefits, but also to close the door on the number of individuals for whom it would be providing open-ended

---

5. In *Spulak*, the employee was told that if he did not immediately retire, he would be fired for various minor rules violations. The appellate court upheld the trial court's ruling that the evidence in the record was sufficient to support a finding of constructive discharge.

future unfunded health benefits, thus significantly improving its ability to project future costs for the retirement medical benefits program as a whole.

Sharply rising health-insurance costs are an ubiquitous problem facing employers. Bay View's 1988 plan changes represented reasonable measures to control future health-insurance costs and to prevent them from hurting its current financial picture. Its rationale cannot be brushed aside as a mere pretext. It is a lawful and reasonable business response to a legitimate business problem, and the record is devoid of evidence to the contrary.

Bay View has asserted legitimate, credible business justifications for the 1988 plan changes. The plaintiffs have failed to offer sufficient evidence that these justifications—reasonable and legitimate on their face—should be deemed unworthy of credence.

The plaintiffs' ADEA claim fails on this separate and distinct ground.

Because the plaintiffs have failed to make out their prima facie case, and because Bay View has asserted a sufficient affirmative defense, Bay View is entitled to summary judgment on the plaintiffs' ADEA claim.

## II. THE ERISA CLAIMS

Plaintiffs challenge Bay View's 1988 plan changes under ERISA on several grounds. They argue:

(1) that the former benefit plan (giving retirees and their spouses fully-paid health benefits) "vested" through agreement of the parties on behalf of the plaintiffs and was therefore not terminable;

(2) that Bay View breached its fiduciary duty to plaintiffs under ERISA section 404, 29 U.S.C. § 1104; and

(3) that Bay View violated ERISA section 510, 29 U.S.C. § 1140, which prohibits employers from discharging or discriminating against a participant or beneficiary "for exercising any right to which he is entitled under the provisions of any employee benefit plan, ... or for the purpose of interfering with the attainment of any

right to which such participant may become entitled under the plan."

In addition, the plaintiffs seek a declaration under ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), that Bay View may not terminate retirees' existing health benefits in the future.

### A. Vesting

■ The parties agree that the plan at issue is an ERISA "employee welfare benefit plan" within the meaning of ERISA section 3(1), 29 U.S.C. § 1002(1). Such plans are expressly exempt under section 201, 29 U.S.C. § 1051(1) from ERISA's vesting provisions governing pension plans.

■ Retiree medical benefits do not vest by statute once an employee becomes eligible or retires. *Williams v. Caterpillar, Inc.*, 944 F.2d 658, 666–67 (9th Cir. 1991), *citing, In Re White Farm Equipment Co.*, 788 F.2d 1186, 1193 (6th Cir. 1986). Moreover, employees generally have no statutory or other legal right to retirement benefits unless and until they satisfy the eligibility requirements set forth in their plan documents. *Williams v. Caterpillar, Inc.*, 944 F.2d at 666 (laid-off workers who were not full-time salaried employees on day immediately preceding their retirement as required by plan held not entitled to benefits under plan).

Nonetheless, "the parties may themselves set out by agreement or by private design, as set out in the plan documents, whether retiree welfare benefits vest, or whether they may be terminated." *In Re White Farm*, 788 F.2d at 1193.

The plaintiffs argue that their right to fully-paid retirement medical benefits "vested," by virtue of oral and written agreements with Bay View, as each of them satisfied the age and service requirements for that benefit, whether or not they actually retired.

In determining whether an employer agreed to limit its right to terminate or amend a retirement medical benefits program on a motion for summary judgment, the Ninth Circuit employs common-law contract-interpretation principles. In *Bower v.*

*Bunker Hill Co.*, 725 F.2d 1221 (9th Cir. 1984), the court first examined the plan documents to determine whether they contained ambiguities regarding termination. Finding ambiguity, the court examined extrinsic evidence, such as "summary plan descriptions" designed for employees, management representations and other relevant evidence. Concluding that that evidence created a genuine issue of material fact as to whether the benefits were vested, it reversed an award of summary judgment in favor of the employer.

The Ninth Circuit has not spoken directly to the burdens of proof in determining whether welfare benefits have or have not vested. The Eighth Circuit has held that, because welfare benefits do not vest under ERISA, "[p]laintiffs have the burden of proving vested welfare benefits." *Howe v. Varity Corp.*, 896 F.2d 1107, 1109 (8th Cir.1990). Plaintiffs, on the other hand, assert that the "employer, as the drafter of the Plan language, bears the burden of showing that the Plan is sufficiently unambiguous regarding subjects of eligibility and scope of benefits and that the plan adequately informed the plaintiffs of whether and under what circumstances the company reserved the right to terminate or modify the Plan." The failure to do so, they argue, is "persuasive extrinsic evidence" that the employer did not intend to retain the right to terminate.

■ This Court agrees with *Howe* that, since ERISA clearly provides that welfare benefits *do not* vest, absent express agreement to the contrary, the plaintiff bears the burden of proving vesting. Applying the Ninth Circuit's analysis in *Bunker Hill,* the Court must first look solely to the plan documents to determine whether the benefits at issue have or have not vested; if those documents are ambiguous, however, the Court may examine extrinsic evidence to determine the parties' intent.

The only documents setting forth the terms on which Bay View offered its retirement medical benefits program to employees are sections of Bay View's "Administrative Directive Manual" governing employee benefits in effect before and after the 1988 plan changes.[6]

The "administrative directives" in effect as of January 21, 1976, February 18, 1976, provided that

Employees who retire at age 55 or more may elect to continue their Health Expense Benefits under the CS & LL Health Plan, with the same coverage as they had while still an employee. [Bay View] will pay or share in the cost of continuing the health coverage for its employees who retire from [Bay View's] employment, and from the general work force, on the bases of the employee's age and length of service at time of retirement. The retirement status of the employee will be determined by [Bay View], based on evidence of the employee's leaving the general work force.

The administrative directive in effect as of May 1, 1978 replaced the first two sentences of the above paragraph as follows:

[Bay View] will pay or share in the cost of continuing Health Plan coverage for its employees who retire at age 55 or more from [Bay View's] employment, and from the general work force, on the bases [sic] of the employee's age and length of service at time of retirement.

That sentence was revised again March 1, 1981 to provide:

[Bay View] will continue to provide Health Plan coverage for its employees who retire at age 55 or more from [Bay View's] employment, and from the general work force, on the basis of the employee's age and length of service at time of retirement.

The administrative directive governing retirement medical benefits was revised again on January 1, 1987, but only to add, as relevant here, the statement that "[Bay View] reserves the right to amend or terminate the ... Program at any time should it

---

**6.** In addition to these documents, Bay View submits "summary plan descriptions" for various health insurers through which Bay View offered health benefits. These are secondary or extrinsic evidence of the terms of Bay View's health benefits program. *See Bower,* 725 F.2d at 1224.

be considered desirable or necessary." Subsequent revisions dated December 1, 1988 and August 1, 1990 reflect the changes at issue in this litigation and continue to contain the express reservation of rights to amend and terminate the program.

These document excerpts are unambiguous. Under none of these various provisions could any Bay View employee acquire a right to retirement benefits, "vested" or otherwise, without actually retiring. Plaintiffs' argument that they acquired a right to vested retirement benefits prior to retirement, therefore, cannot be sustained.

■ Whether plaintiffs acquired a vested right to fully-paid medical benefits upon retirement is a separate issue upon which plaintiffs seek a declaration. The plan documents in effect at the time plaintiffs actually retired contained an express reservation of rights to amend or terminate the retiree health benefits program at any time. It is therefore unlikely that the plaintiffs would be able to meet their burden of proving that their benefits vested at the time of retirement; however, the Court finds it unnecessary to reach this issue because it finds the request for declaratory relief premature.

There is no actual case or controversy as to whether the plaintiffs' benefits vested at retirement because Bay View has done nothing to indicate that it intends to terminate or amend the plaintiffs' health benefits. Bay View's counsel represented to the Court on the record that Bay View has no plans to change the retiree medical benefits program and does not intend to do so. In the event that Bay View ever takes steps to terminate or amend the program, the plaintiffs may well have a cause of action for declaratory relief on the question of vesting. The request for a declaration is denied without prejudice.

### B. *Fiduciary Duty*

■ ERISA section 404 (29 U.S.C. § 1104) imposes certain responsibilities on "fiduciaries" charged with administering ERISA welfare benefit plans. Plaintiffs assert that Bay View breached its fiduciary duties by making the plan changes at issue here. Bay View responds that section 404 does not apply here because Bay View acted as an employer vis-a-vis the benefits at issue and not as a fiduciary.

The courts, in interpreting an employer's responsibilities under section 404, have made clear that an employer wears two hats—one as fiduciary of the employee benefit programs it has established, the other as employer negotiating, extending, amending or terminating benefit programs. Bay View cites *Musto v. American General Corp.*, 861 F.2d 897 (6th Cir.1988), *cert. denied*, 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989), in which the Sixth Circuit upheld an employer's right to amend welfare benefit plan provisions, explaining that "[t]here is a world of difference between administering a welfare plan in accordance with its terms and deciding what those terms are to be. A company acts as a fiduciary in performing the first task, but not the second." *Id.* at 911. In deciding to "establish, amend, or terminate a benefits plan, as opposed to managing any assets of the plan and administering the plan in accordance with its terms, its actions are not to be judged by fiduciary standards." *Id.* at 912. *See also West v. Greyhound Corp.*, 813 F.2d 951 (9th Cir.1987) (employer did not violate ERISA's fiduciary provisions when, during collective bargaining negotiations, it threatened them with termination if they did not accept reduced benefits).

Plaintiffs vainly attempt to distinguish *Musto* on the grounds that there, the employer had clearly reserved the right to terminate benefits. This distinction is unavailing. The presence or absence of certain language in the plan materials does not abolish or even blur the distinction between the roles of employer and fiduciary for ERISA purposes. In making the plan changes at issue, Bay View acted as an employer, not as a fiduciary. Section 404 is not relevant to this action.

### C. *Section 510: Constructive Discharge*

■ ERISA's section 510 (29 U.S.C. § 1140) provides that

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan....

Plaintiffs assert that Bay View "discriminated against the plaintiffs by constructively discharging them for exercising their right to fully paid retiree health benefits under Bay View's plan," thus violating section 510. This assertion runs counter to controlling Ninth Circuit authority and, moreover, is illogical.

In *Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869, 881 (9th Cir.1989), *cert. denied*, —— U.S. ——, 111 S.Ct. 53, 112 L.Ed.2d 28 (1990), the Ninth Circuit interpreted section 510 to apply where "(1) an employee participates in a statutorily protected activity, (2) an adverse employment action is taken against him or her, and (3) a causal connection existed between the two." *Id.* at 881. This means that the plaintiffs must show that their exercise of an ERISA right "was the motivating force behind [their] discharge." *Id.* at 881.

The facts of this case do not come close to meeting the *Kimbro* test. First, for the reasons already stated, the plaintiffs were not constructively discharged. Rather, the 1988 plan changes reduced benefits across-the-board for *all* employees and offered plaintiffs an option, akin to an early retirement plan, to enjoy the benefits available under the earlier plan if they retired by a certain date. Second, plaintiffs' retirement was at all times a condition precedent to receiving fully-paid benefits after retirement. Without retiring first, they never had the option to receive fully-paid benefits, either before or after the 1988 plan changes. None of Bay View's actions could therefore have constituted a retaliation for plaintiffs' election of fully-paid health benefits. Further, the record is devoid of evidence of retaliatory or other improper motive. The claim under section 510 is without merit.

## CONCLUSION

Through this lawsuit, plaintiffs have asked the Court to extend ERISA and the ADEA beyond their natural and intended scopes. In granting Bay View's motion, the Court does not make light of or in any way disparage the needs of retirement-age individuals for secure medical coverage; the high cost and limited availability of medical coverage for many individuals is a serious and widespread national concern whose impact falls heavily upon the elderly. Nonetheless, the law does not give the plaintiffs a cause of action against Bay View under the ADEA or ERISA on the facts presented here. It would be the proper role of the legislature, not this Court, to enact legislation mandating greater security in medical benefits for employees. Bay View's motion for summary judgment is therefore granted.

SO ORDERED.